## In re Ray A. HOFFMAN and Bettyann C. Hoffman, Debtors.

### Bankruptcy No. 83–05598.

United States Bankruptcy Court, D. North Dakota.

Aug. 6, 1985.

Daniel Wentz, Fargo, N.D., for debtors.

Norman Anderson, Asst. U.S. Atty., Fargo, N.D., for U.S.

Ross Espeseth, Bismarck, N.D., for Unsecured Creditors Committee.

William Westphal, Minneapolis, Minn., Trustee.

## ORDER

WILLIAM A. HILL, Bankruptcy Judge.

The Court has under consideration before it confirmation of a Plan of Reorganization filed by the Debtors, Ray and BettyAnn Hoffman. The Debtors filed a Reorganization Plan and Disclosure Statement with the Court on December 18, 1984. An Amended Plan and an Amended Disclosure Statement were subsequently filed by the Debtors on March 11, 1985. The Court entered an Order dated May 2, 1985, approving the Amended Disclosure Statement and set June 19, 1985, as the date for hearing on confirmation of the Reorganization Plan. An objection to the Amended Plan of Reorganization was filed by the Government on June 10, 1985. On June 18, 1985, the Debtors filed an Application for cram-down of the Plan of Reorganization under 11 U.S.C. § 1129(b). Hearing on confirmation of the Debtors' Plan of Reorganization was held June 19, 1985. The United States of America, acting through the Farmers Home Administration, was the sole class of creditors who voted to reject the Plan.

The United States of America filed a proof of claim dated February 10, 1984, in the bankruptcy case of Ray and BettyAnn Hoffman. The Debtors' obligation to the Farmers Home Administration set out in the proof of claim amounted to $102,821.98 as of November 23, 1983. Daily interest accrual on the debt was calculated at $13.85. Four of the loans which comprise the Debtors' obligation to the Farmers Home Administration are secured by a second mortgage on the following described real property located in Foster County, North Dakota:

Southwest Quarter (SW¼) of Section Four (4), Township One Hundred Forty-six (146), Range Sixty-four (64); Northwest Quarter (NW¼), Section Five (5), Township One Hundred Forty-six (146), Range Sixty-four (64); Northeast Quarter (NE¼) of Section Eight (8), Township One Hundred Forty-six (146), Range Sixty-four (64); Northwest Quarter (NW¼), Section Nine (9), Township One Hundred Forty-six (146), Range Sixty-four (64); Southwest Quarter (SW¼), Section Thirty-three (33), Township One Hundred Forty-seven (147), Range Sixty-four (64); Southwest Quarter (SW¼), Section Thirty-one (31), Township One Hundred Forty-seven (147), Range Sixty-four (64); Southeast Quarter (SE¼) of Section Twenty-five (25), Township One Hundred Forty-seven (147), Range Sixty-five (65).

The Government has provided the following chart of loan characteristics concerning the notes which are secured by the real estate mortgage:

| | Loan 41–02 | Loan 43–09 | Loan 43–10 | Loan 43–12 |
|---|---|---|---|---|
| Date of Note | 8–16–73 | 3–09–78 | 3–09–78 | 3–07–80 |
| Interest Rate | 5% | 8% | 3% | 5% |
| Loan Program | Farm Ownership | Emergency | Emergency | Emergency |
| Original Amount of Note | $16,200 | $ 3,600 | $13,000 | $70,600 |
| Unpaid Balance as of 1–1–85 | Prin. 13,721.70<br>Int. 2,400.44<br>$16,175.14 | Prin. 3,317.80<br>Int. 951.25<br>$ 4,269.05 | Prin. 8,762.24<br>Int. 818.14<br>$ 9,580.38 | Prin. 59,529.94<br>Int. 9,271.98<br>$68,801.92 |
| Delinquency | $2,832.00 | $ 906.00 | $9,581.09 | $25,200.00 |
| Annual Payment | $ 944.00 | $ 237.00 | due and payable | $ 8,400.00 |
| Date of Maturity | 8–16–2013 | 3–09–2018 | 3–09–85 | 3–07–87 |

The Debtors' Plan of Reorganization proposes treatment of the claim filed by Farmers Home Administration as follows: 1) an annual payment of $5,000.00, commencing on December 1, 1985, and continuing each year until the claim of Federal Land Bank has been satisfied; 2) the $5,000.00 annual payment shall be applied first to the payment of the principal balance of Loan 43–09, with the remainder divided equally and paid against the principal of Loans 41–02, 43–10, and 43–12; 3) once Federal Land Bank's claim has been satisfied, the balance of the Farmers Home Administration's claim shall be rewritten into two new promissory notes to be amortized and paid over a 30-year period at the rates of interest provided for in Loans 41–02, 43–10 and 43–12. The Debtors propose under their Plan to satisfy the claim of the Federal Land Bank through a sale of the following described real estate:

The Southwest Quarter (SW¼) of Section Thirty-one (31), Township One Hundred Forty-seven (147), Range Sixty-four (64); Southeast Quarter (SE¼) of Section Twenty-five (25), Township One Hundred Forty-seven (147), Range Sixty-five (65). All located in Foster County, North Dakota.

The Amended Plan of Reorganization provides that the real estate will be sold within a period of two years. The Farmers Home Administration will release its claim against the property proposed for sale and the proceeds of any sale will be paid to the Federal Land Bank.

The Farmers Home Administration has objected to its treatment under the Debtors' Plan of Reorganization on two principal grounds. First, it is alleged that the Plan is not feasible since confirmation of this Plan is likely to be followed by the further need for financial reorganization. See 11 U.S.C. § 1129(a)(11). More importantly, the Government claims that the Plan of Reorganization does not propose fair and equitable treatment of its interests as required under 11 U.S.C. § 1129(b)(1).

## CONCLUSIONS OF LAW

A proposed plan of reorganization may be confirmed only if all provisions of 11 U.S.C. § 1129(a) are met. Section 1129(a)(11) provides that the court shall determine that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11). Thus, the Court must find that the proposed Plan of Reorganization under consideration is feasible. The Eighth Circuit Court of Appeals has recently stated that:

In determining whether [a plan] is feasible, the bankruptcy court has an obligation to scrutinize the plan carefully to determine whether it offers a reasonable prospect of success and is workable.

*In re Monnier Bros.*, 755 F.2d 1336, 1341 (8th Cir.1985) (citing *United Properties, Inc. v. Emporium Department Stores, Inc.*, 379 F.2d 55, 64 (8th Cir.1967)). Factors to be considered when judging the feasibility of a plan includes the business's earning power, the sufficiency of the capital structure, economic conditions, managerial efficiency, and whether the same management will continue to operate the company. *In re Clarkson*, 767 F.2d 417 (8th Cir.1985). Whether the Plan of Reorganization proposed by Ray and BettyAnn Hoffman is workable depends on the successful discharge of their obligation to the Federal Land Bank. The Debtors propose to satisfy the claim of the Federal Land Bank through a sale of certain parcels of real estate. The Debtors' Plan requires that the real estate be sold and the proceeds paid to Federal Land Bank within a period of two years. There is no assurance, however, that a sale of the real estate will be completed within the two-year period, and there is no provision in the Plan of Reorganization for treatment of the Federal Land Bank claim in the event there is no sale of the real estate. Plan modification or further financial reorganization would be necessary at the end of the two-year period if the claim of Federal Land Bank is not satisfied. Feasibility as noted in the case of *In re Bergman*, 585 F.2d 1171 (2nd Cir.1978), contemplates "the probability of actual performance of the provisions of the plan. Sincerity, honesty and willingness are not sufficient to make the plan feasible, and neither are visionary promises. The test is whether the things which are to be done after confirmation can be done as a practical matter under the facts." In this regard, the Court is not satisfied that the proposed sale of the real estate as contemplated is sufficiently concrete to assure either consummation within the two years or that even if sold within the two-year period the price obtained would be sufficient to pay the principal balance and accrued interest owing to Federal Land Bank. The Court must conclude that the requirement of 11 U.S.C. § 1129(a)(11) has not been met in this instance.

An additional requirement before a court may approve confirmation under section 1129(a) of the Bankruptcy Code is that each class of claims or interests must either accept the plan or be a class which is not impaired under provisions of the plan. *See* 11 U.S.C. § 1129(a)(8). Debtors may yet seek under 11 U.S.C. § 1129(b) confirmation of their plan of reorganization over the objection of a non-accepting, impaired class of claims. A court is allowed to confirm a plan under section 1129(b) if it determines that the plan does not discriminate unfairly, is fair and equitable with respect to each class of impaired claims or interests which have not accepted the plan, and all provisions of section 1129(a) except for paragraph (8) have been met. *See* 11 U.S.C. § 1129(b)(1). The Government claims that the Plan of Reorganization proposed by Ray and BettyAnn Hoffman does not provide fair and equitable treatment of the Farmers Home Administration's interests as required under section 1129(b). Fair and equitable treatment of an impaired, secured claim includes the following requirements:

With respect to a class of secured claims, the plan provides—

(i)(I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

(II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

(ii) for the sale, subject to section 363(k) of the title, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or

(iii) for the realization by such holders of the indubitable equivalent of such claims.

11 U.S.C. § 1129(b)(2)(A). Adequate protection is neither an enumerated element under section 1129(b) nor a standard used in connection with confirmation decisions. *See In re Monnier Bros.*, 755 F.2d at 1340. Nevertheless, the court in *Monnier* stated that adequate protection concerns must be addressed when judging whether the plan discriminates unfairly or is fair and equitable with respect to dissenting classes of secured claims. *Id.* The measure of risk imposed upon a secured claim by terms of a reorganization plan is determined after weighing factors which include 1) the claimant's equity cushion; 2) the rate of depreciation in the value of the property given as collateral; 3) whether the contract rate of interest is adequate to pay for use of the creditor's money. The Government in this instance has alleged that the contract rate of interest on its loans is insufficient to provide it with deferred cash payments which are at least equal to the value of their present interest in the collateral. Aside from the allegation, the Court has little evidence before it to sufficiently ad-dress the various factors which measure the risk to the Government's interests. The Government did not, however, focus upon any one factor as indicating unfair or inequitable treatment of its claims. The primary concern of the objecting creditor in this instance is to the substantial change in the terms of their loan agreement with the Debtor.

 It has become increasingly apparent from recent appellate decisions that the disruption of interests in property caused by bankruptcy cases must be minimal or non-existent. The Eighth Circuit Court of Appeals has stated, as follows:

It is equally well-settled, however, that state laws are suspended only to the extent of actual conflict with the bankruptcy system provided by Congress, so that in the absence of any conflict between the state and bankruptcy laws, the law of the state where the property is situated governs questions of property rights. . . .

*Johnson v. First National Bank of Montevideo*, 719 F.2d 270, 273 (8th Cir.1983) (citations omitted). The court in *Johnson* determined that the automatic stay of 11 U.S.C. § 362 did not operate to suspend a redemption period given to a secured creditor under state law. *Id.* at 276. In the recent decision, *In re Martin*, 761 F.2d 472, 476 (8th Cir.1985), the court stated that "to encourage reorganization, the courts must be flexible in applying the adequate protection standard." The court additionally noted that "[t]his flexibility, however, must not operate to the detriment of the secured creditor's interest." *Id.* The appellate court has likewise sought to minimize disruption of debtors' interests in property. The court in *In re Hulm*, 738 F.2d 323, 326 (8th Cir.1984), recognized that under North Dakota law, a debtor retained an interest in property at least until expiration of the redemption period. The court in *Hulm* determined that where there are allegations of fraudulent conduct in connection with a transfer of the debtor's property interests at a foreclosure sale, a full evidentiary hearing is required to ensure that the debt-

or has received proper value in exchange for his interests in the property. *Id.* at 327. The concern expressed throughout these appellate decisions is not to diminish or restrict interests in property, but to protect the wide scope of property interests which are endangered by bankruptcy proceedings. Generally, the source of a creditor's interest in collateral is the terms and conditions contained in a security agreement reached with the debtor. Alteration of those terms and conditions disrupts the creditor's rights and interests in collateral. In that connection, this Court will not allow substantial disruption of bargained-for rights which accompany interests in property and collateral. In the present instance, the Hoffmans propose substantial changes in the terms of their agreements with the Government. While the Debtors propose to retain contract interest rates, their Reorganization Plan additionally provides for a consolidation of the loans, an extension of the loan terms, and a release of a portion of the Government's mortgage lien. The Government contends the Debtors have also failed to incorporate in their Plan additional necessary terms and conditions relating to such items as securing rents and profits, assignability and assumability of their mortgage, and provisions relating to the Debtors' default and the Government's right to accelerate the loans. This Court must find that the Plan does not provide fair and equitable treatment of the Government's claims where its provisions substantially vary the terms and conditions of the original agreements made with the Government. The Court will not insist that the Debtors comply with 11 U.S.C. § 1124(2) as a minimum requirement for cram-down. Nevertheless, this Court cannot confirm through cram-down a reorganization plan over the objection of a creditor whose interests are substantially altered by provisions of the proposed plan of reorganization. The court in *Monnier* confirmed a plan of reorganization over the objection of a secured creditor. The provisions of the plan under examination in that case, however, *did not involve consolidation of loans* or a substantial extension of the original period of repayment. This Court is confident that the confirmation in *Monnier* would not have been allowed by the court if the plan's provisions included substantial revisions akin to those proposed by the Hoffmans.

Accordingly, and for the reasons stated, IT IS ORDERED:

That the Debtors' application for confirmation under 11 U.S.C. § 1129(b) is DENIED.