**In re Walter W. WEBSTER and Billie J. Webster, Debtors.**

**Bankruptcy No. 85–05058.**

United States Bankruptcy Court, D. North Dakota.

Oct. 1, 1986.

David Johnson, Fargo, N.D., for debtors.

Vicki Aldridge, Fargo, N.D. for U.S. (FmHA).

Terry Wiles, Fargo, N.D., for creditors committee.

## ORDER

WILLIAM A. HILL, Bankruptcy Judge.

The matter before the court is a motion by the debtors, Walter and Billie Webster (Debtors), for confirmation of their First Amended Plan of Reorganization pursuant to section 1129(b)(1) of the Bankruptcy Code. The Debtors' initial plan of reorganization, filed January 16, 1986, was objected to by numerous creditors including Farmers Home Administration (FmHA) and was not confirmed. The Debtors subsequently filed their first Amended Chapter 11 Plan of Reorganization on August 8, 1986. The Debtors moved for confirmation pursuant to section 1129(b)(1), commonly referred to as the cramdown section, on July 29, 1986. The only party which has objected to the First Amended Chapter 11 Plan of Reorganization is FmHA. FmHA has also made a section 1111(b) election.

The Debtors owe FmHA approximately $270,000.00, which is secured by 320 acres of real estate valued at $105,000.00. The Debtors' home is located on this property and is included in the valuation. Under the plan, the Debtors treat the FmHA debt under two impaired classes. Class I consists of a $210,000.00 debt to FmHA payable over thirty (30) years with equal installments of $7,000.00 per year and no interest. This obligation will be secured by the 320 acres of real estate currently mortgaged to FmHA, less 40 acres which includes the Debtors' home and buildings.

Class II consists of a $90,000.00 debt payable to FmHA over thirty (30) years at no interest. This debt will be secured by a mortgage on the 40 acre tract which includes the home and building site of the Debtors.

■ The parties agree that the total proposed payments to FmHA effectively equal payments on the present value of FmHA's collateral amortized at ten percent (10%) interest over thirty years. However, once a section 1111(b) election has been made, FmHA has the right to receive the full amount of its allowed claims over time, as long as these payments have a present value determined as of the effective date of the Plan of at least the value of the claimant's interest in its collateral. 5 Collier on Bankruptcy ¶ 1111.02[5] (15th ed. 1985).

The sole basis for FmHA's objection is that the Debtors' proposal to separate FmHA's claim into two separate classes substantially alters the terms and conditions of the original agreement and thus violates confirmation requirements of the Bankruptcy Code.

Section 1129(b)(1) requires that a plan must be fair and equitable with respect to each class of claims or interests impaired under the plan before it is capable of confirmation. This court has previously held that a plan is not fair and equitable where its provisions substantially vary the terms and conditions of the original agreements. *In re Hoffman,* 52 B.R. 212, 216 (Bankr.D. N.D.1985). FmHA emphasizes that its regulations do not allow the separation of property into separate parcels before foreclosures and thus the bankruptcy court should not allow this either. While this may be FmHA's policy, FmHA policy does not concern this court in determining whether FmHA's interest would be substantially altered under the plan. The Bankruptcy Code, developing case law, and this court's posture as a court of equity are the determinative factors in deciding if a plan is fair and equitable and thus capable of confirmation.

Few courts have addressed the issue currently before this court: whether the Debt-

ors' plan in bifurcating the obligation and security substantially varies the terms of the original agreement. This court has held that a Debtor's plan of reorganization which requires that a secured creditor release a mortgage lien is a substantial alteration of the original agreement and therefore is not fair and equitable. *In re Hoffman*, 52 B.R. 212, 217 (Bankr.D.N.D.1985). Likewise, where a plan requires that a creditor extinguish all third party guarantees presently securing a note, the terms of the original loan agreement has been substantially changed and the plan is not fair and equitable. *In re Eller Bros., Inc.*, 53 B.R. 10, 12 (Bankr.M.D.Tenn.1985).

In the instant case, FmHA is retaining all of its security. Furthermore, FmHA will receive payments under the plan equalling the present value of its collateral, amortized at approximately ten percent. FmHA does not object to the amortization rate.

▇ FmHA's sole objection is that its claim, originally secured by the 320 acres, is being divided into two classes, with each class being secured by a portion of the original mortgage. Section 1122 of the Bankruptcy Code provides for classification of claims. Although the language of Section 1122 gives little guidance to the classification issue before the court, the general rule is that the classification in a plan should not do substantial violence to any claimant's interest. *Matter of LeBlanc*, 622 F.2d 872, 879 (5th Cir.1980). The plan should not arbitrarily discriminate against creditors. *Id.* However, a bankruptcy court, as a court of equity, can make exceptions to strict rules of classification and "permit discrimination when the facts of the case justify it". *Id.* In the instant case, FmHA has not been discriminated against by the separate classification of its claim. FmHA's interest is to be classified in two separate classes with a portion of the original real estate mortgage allocated to each class. The Debtors allocated the mortgage and debt in such a way that they felt it to be fair and equitable and representative of the value of the property. Although FmHA alluded to the fact that the Debtors themselves, and no professional appraisers, made the allocation, FmHA did not object to the value allocation as ultimately made by the Debtors, nor did FmHA present testimony to establish a contrary valuation. Indeed, the Debtors used FmHA's own valuation on the 320 acres as a whole.

In the instant case, Mr. Webster is in excess of sixty years of age. The Debtors have a very moderate standard of living. They have projected living expenses at $10,000.00. The Debtors project to have a gross income from their 320 acre farming operation of approximately $32,000.00 with an additional $6,000.00 of income from Mrs. Webster's outside employment. At this time, the Debtors believe that they will be able to make all of the payments as contemplated under the plan. If this results, FmHA will receive exactly as much with its claim split up into two classes as it would if it remained in one. However, if the Debtors find that they are unable to make all of their payments under the plan, the Debtors' priority would be to make their Class II payments, the debt of which is secured by the 40 acre homestead property. If worse came to worse, the debtors would be able to survive from the income earned by raising their sheep on the forty-acre parcel. FmHA then would be entitled to foreclose and sell the other 280 acres securing the Class I obligation.

This court has, in this case, pushed the Bankruptcy Code requirements to the limit in an effort to reach what the court feels is a fair and equitable result for both parties. This court will certainly not make it a policy to allow debtors to divide secured creditors' claims into various classes. However, in this limited instance, FmHA, as a secured creditor, will not be harmed by this allocation. A bankruptcy court determination does not change FmHA policy, a result which FmHA seems to be clearly concerned about.

Accordingly, and for the reasons stated herein, the court concludes that the Debtors' First Amended Plan of Reorganization

does meet the requirements of section 1129, is proposed in good faith, is not likely to be followed by liquidation or the need for further reorganization beyond that as provided in the plan and is hereby confirmed.

IT IS SO ORDERED.