**In re Martha Dean THURMON, Debtor.**

**Bankruptcy No. 87–526–BKC–3P1.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

May 31, 1988.

Lionel Silberman, Orlando, Fla., for debtor.

Edward A. Marod, West Palm Beach, Fla., for City Federal S & L.

Nicholas Puligano, Jacksonville, Fla., for Southeast Bank.

James Bledsoe, Jacksonville, Fla., for First Fidelity Bank, N.A., New Jersey.

Michael Bowlus, Jacksonville, Fla., for Ocala National Bank.

Raymond Magley, Jacksonville, Fla., for First City Bank.

Ginnie Van Kesteren, Tampa, Fla., Asst. U.S. Trustee.

## ORDER DENYING CONFIRMATION OF DEBTOR'S PLAN OF REORGANIZATION AND SETTING FEES DUE U.S. TRUSTEE

GEORGE L. PROCTOR, Bankruptcy Judge.

This matter was before the Court on May 19, 1988 at the second continued hearing on Confirmation of the Amended Plan of Reorganization, as First Modified (hereinafter the "Plan") propounded by the Debtor, Martha Dean Thurmon. After full consideration of the Plan, the objections to the Plan, the evidence and the applicable law, as set forth below, confirmation of the Plan is hereby DENIED. On the *Ore tenus* of motion of the U.S. Trustee, the fees due pursuant to Section 1930 are set at $600. By separate order pursuant to 11 U.S.C. Section 1112, the court has ordered the case to be converted to a Chapter 7 case.

### PROCEDURAL HISTORY

This Chapter 11 proceeding was commenced by the filing of a voluntary petition on April 9, 1987. The Debtor filed her first Plan of Reorganization on August 18, 1987. The disclosure statement was approved on October 8, 1987. At the first hearing on confirmation on February 9, 1988, the Debtor was granted permission to file an amended plan of reorganization and the confirmation hearing was continued to March 8, 1988. Order dated February 10, 1988.

At the continued confirmation hearing, the Court heard testimony, accepted documentary evidence, and heard argument of counsel with respect to the Plan and the objections which has been filed. During the course of the hearing, however, the Debtor once again sought leave of court to modify the Plan. After an adjournment to March 21, 1988, that request was granted and a second continued confirmation hearing was scheduled for May 19, 1988.

At the hearing on May 19, 1988, the court took notice of the evidence which it had previously admitted and heard additional testimony, accepted additional documentary evidence, agreed to take judicial

notice of certain portions of the court file, and heard argument of counsel for the debtor and parties in interest.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Confirmation of a proposed plan of reorganization is governed by the provisions of 11 U.S.C. Section 1129. The initial inquiry is whether the proposed plan complies with all of the requirements of Section 1129(a). If all of the requirements of Section 1129(a) except paragraph 8 (the required vote by impaired classes) have been met, a proposed plan may still be confirmed under the provisions of 1129(b). Where, as here, provisions of Section 1129(a) other than paragraph 8 have not been met, consideration of the requirements of Section 1129(b) is neither necessary nor appropriate.

The objections to the Plan fell into three categories:

1. Objections that the plan was not in the best interest of creditors, i.e., did not satisfy Section 1129(a)(7);

2. Objections that the plan was not feasible, i.e., did not satisfy with Section 1129(a)(11);

3. Objections in anticipation of the possible consideration of the plan under 11 U.S.C. Section 1129(b).

The court's treatment of these objections is set forth below.

■ Although the evidence of values and claims was somewhat sketchy, it was sufficient for the court to conclude that in the event of an immediate liquidation, each holder of a claim or interest in an impaired class which had not accepted the plan would receive and retain under the plan on account of its claim or interest property of a value as of the effective date of the plan that is not less than the amount that such holder would receive or retain if the debtor were liquidated under Chapter 7 on that date. In reaching this conclusion, the court assumes, as it must, that what such classes will receive under the plan is that which is promised under the plan, *assuming arguendo that the Plan is feasible. In re Martin*, 66 B.R. 921 (Bankr.D.Mont. 1986). The purpose of Section 1129(a)(7) is to prevent confirmation of a plan which does not *propose* to pay more than creditors would realize in a straight liquidation, because such a plan necessarily would not be in the best of interest of creditors. The question of whether or not the promises contained in the plan are reasonably likely to be kept is to be addressed in consideration of "feasibility" under 11 U.S.C. Section 1129(a)(11). Therefore, the objections based upon Section 1129(a)(7) are overruled.

■ Analysis pursuant to Section 1129(a)(11) does require the court to determine that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." Under this so-called "feasibility" requirement, the court has an obligation to scrutinize the plan carefully to determine whether it offers a reasonable prospect of success and is workable. *In re Monnier Brothers*, 755 F.2d 1336, 1341 (8th Cir. 1985); *In re Hoffman*, 52 B.R. 212 (Bankr. D.N.D.1985). Factors to be considered when judging the feasibility of the plan include the earning power of the business, the sufficiency of the capital structure, economic conditions, managerial efficiency, and whether the same management will continue to operate the company. *In re Clarkson*, 767 F.2d 417 (8th Cir., 1985); *In re Hoffman, supra. See also, In re Agawam Creative Marketing Associates, Inc.*, 63 B.R. 612 (Bankr.D.Mass., 1986). Success need not be guaranteed. *In re Monnier Brothers, supra.* However, feasibility addresses "the probability of actual performance of the provisions of the plan. Sincerity, honesty and willingness are not sufficient to make the plan feasible, and neither are visionary promises. The test is whether the things which are to be done after confirmation can be done as a practical matter under the facts." *In re Bergman*, 585 F.2d 1171 (2d Cir.1978); *In re Hoffman, supra.* The evidence presented was insufficient to permit the court to find that the plan proposed by the debtor in this case was "feasible".

192

■ The plan, essentially, calls for the debtor to change her business from the business of breeding and raising horses to the business of developing a luxury single family residential real estate project. Although such a change in direction is not impossible *per se*, it is a substantial change. Many things must be combined in order to make the success of such a change reasonably likely—things including management, professional support, market conditions, and money.

In this case, the debtor herself has had experience in the development of real estate. However, her experience was all in the State of Texas before the most recent declines in oil prices. She admits she has no experience developing real estate in the State of Florida. Although professional support may be available to the debtor, no evidence was presented to suggest that the support was in place. Moreover, the more persuasive evidence with respect to market conditions suggest that market conditions in the vicinity of the debtor's property are not such as would be conducive to the success of a development of the sort proposed in the Plan. Most important, however, there is no money.

At the continued confirmation hearing on March 8, 1988, the debtor testified concerning the possibility of capital infusion from a relative. At the hearing on May 19, 1988, however, she testified that no capital infusion was forthcoming from that source. The debtor also mentioned a lease purchase agreement which she had entered with one John Burger and his wife as a potential source of cash. This agreement, (City Federal's Exhibit 1 in Evidence, May 19, 1988), provides for monthly payments to the debtor of $5,000 for 18 months and then calls for the Burger's to purchase 147 of the debtor's 275 acres of land in Marion County, Florida for a price of $2 million. However, this closing is conditional upon the Burger's being able to obtain financing from either the debtor or an existing mortgagee at no more than 9% annual interest amortized monthly at a 30 year pay out and a balloon payment of the principal balance at the end of the 10th year or financing from a third party at a rate less than 12%

per annum. *Id.* ¶ 20B. If those conditions are not met, the closing could be deferred at the option of the Burgers for an additional 18 months.

At the second continued confirmation hearing, Mr. Burger testified that he had not yet applied for financing to purchase the property pursuant to the agreement. Although he testified that he could put together such an application within 30 days, he candidly admitted that even if he were to do so, he would not go forward with a closing pursuant to the agreement unless the financing terms made available to him were favorable. Thus, since the lease purchase agreement calls for payments of only $5,000 per month until the "closing", the court cannot find that the money which would be necessary to fund the plan of the sort proposed in the debtor's plan is reasonably likely to come from the Burgers.

Although the debtor did present evidence that she had made arrangements with a contractor to do a portion of the work necessary to get her proposed real estate development "off the ground" (see Debtor's Exhibit 1 in Evidence, May 19, 1988), this is not enough. Notwithstanding, the debtor's incontestable good faith, confidence, and hope, the court cannot conclude that confirmation of the plan proposed by the debtor "is not likely to be followed by the liquidation, or the need for further financial reorganization of the debtor." Therefore, the objections pursuant to 11 U.S.C. Section 1129(a)(11) are sustained.

At the hearing on May 19, 1988, the Assistant U.S. Trustee asked the court to take judicial notice of the financial report file in the case and to determine that the fees payable under Section 1930 were $1,500 of which $900 had been paid as of May 19, 1988. Hearing no objection from any party in interest at the hearing, the court thereupon ruled that the fees payable under Section 1930 after giving credit for payments made through May 19, 1988 are $600. Those fees have not been paid as of this date and, the plan does not specifically call for their payment. Thus, an objection under 11 U.S.C. Section 1129(a)(12), if

made, would have been sustained unless the debtor further modified her plan to provide for this payment or, in the alternative, made the payment prior to the date of confirmation.

Since all impaired classes did not accept the plan, it is clear that the provisions of 11 U.S.C. Section 1129(a)(8) have not been met. If this were the only provision which had not been complied with, this would bring into play Section 1129(b) ("Cramdown"). However, since the court has found that the plan is not feasible, it is not necessary to consider the "cramdown" issues.

Based upon the foregoing, the court hereby orders:

A. The fees payable by the debtor to the United States Trustee pursuant to 28 U.S.C. Section 1930 after credit for payment made through May 19, 1988 are $600;

B. The objections based upon 11 U.S.C. Section 1129(a)(11) are SUSTAINED;

C. All other objections to the plan are OVERRULED:

D. Confirmation of the plan is hereby DENIED.