BREITENSTEIN, Circuit Judge.
After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the *1457 determination of this appeal. See Fed.R. App.P. 34(a); Tenth Cir.R. 10(e). The cause is therefore ordered submitted without oral argument.
This appeal is from a judgment of the United States District Court for the District of Colorado overruling the appellant’s objections to two orders of the bankruptcy court for the District of Colorado. One order related to the amount due under a note and deed of trust securing payment and the other to a confirmation of the debtor’s plan of reorganization submitted by the Pikes Peak Water Company in reorganization proceedings under Chapter 11 of the bankruptcy laws. We affirm.
The following facts are taken from the disclosure statement of the debtor, Pikes Peak Water Company, Pikes Peak, R.Vol. I, pp. 27-33. It was incorporated in 1972 for the purpose of converting agricultural water to municipal use. In 1973, it negotiated water contracts with the towns of Security and Widefield, Colorado, for the sale of water. The contracts were based on the construction of a pipeline. In 1974, Pikes Peak acquired 1,440 acres of land and the attached water rights.
Travelers Insurance Company, Travelers, is the holder of a note secured by a deed of trust against virtually all of the property and improvements of Pikes Peak. During 1974 and 1975, Travelers made three separate loans to Pikes Peak: first, for the acquisition of the 1,440 acres; second, for the construction of the pipeline; third, for operating funds required by Pikes Peak to initiate operations. Between 1975 and about February, 1979, Pikes Peak sold bulk water pumped from its underground water reserves beneath the 1,440 acres to the towns of Security and Widefield. The water contracts did not generate enough cash flow to permit Pikes Peak to service its debt to Travelers.
In February, 1979, Pikes Peak and Travelers met for the purpose of consolidating the existing loans. The negotiations, coupled with the injection of new money into Pikes Peak’s operations, resulted in a rewritten loan in February, 1979, for an outstanding principal balance of $1,479,500.00. R.Vol. Ill, p. 8. The restructured loan called for payment of interest through 1981. Thereafter, it called for monthly amortization of both interest and principal. Pikes Peak made the required payments only until February, 1981.
In April, 1982, Travelers initiated foreclosure proceedings on its deed of trust. R.Vol. I, p. 148. On May 24, 1982, Pikes Peak filed a voluntary petition for reorganization under Chapter 11 of the United States Bankruptcy Code. On June 23 and 24, 1983, Pikes Peak’s plan of reorganization came on for confirmation before the bankruptcy judge. Travelers objected on two grounds: first, to the determination of the amount due it under its loans; and, second, the plan did not adequately protect Travelers. The bankruptcy judge disposed of these by two orders dated August 25, 1983, Id. pp. 144-147 and 148-155, holding against Travelers on both issues. Travelers took an appeal to the district court for the District of Colorado. The court affirmed the opinions of the bankruptcy judge and Travelers appealed to this court. We have jurisdiction under 28 U.S.C. § 1291.
As to the first, the difference between the parties is the rate of interest chargeable after default. The note, secured by the deed of trust, calls for the payment of $1,479,500.00 with interest at 10.5% until December 1, 1980, and 11% thereafter until fully paid. The note is attached to the appellant’s opening brief as Appendix A. The last paragraph of the note reads, p. 3, App. A:
“All interest due and unpaid shall, upon the day following the stated date for payment thereof, become a part of the principal indebtedness hereunder. All sums advanced by TRAVELERS for payment of taxes, insurance or other items which are the subject of payment covenants in the security instrument appurtenant hereto, shall, upon the date paid by TRAVELERS, become a part of the principal indebtedness hereof. The principal or unpaid balance thereof and *1458 all amounts which may become part of the principal or unpaid balance thereof pursuant to this paragraph, shall draw interest at the rate of thirteen per cent (13%) per annum after the maturity date of any respective payment or upon declaration of default.”
The trust deed securing the note provides that Pikes Peak is to pay all taxes and assessments on the property, to pay all rents, fees or charges becoming due, and to keep the property in good repair. Paragraphs 3, 4, 5, and 6 of the deed of trust. R.Vol. I, pp. 106-108. If the debtor failed to do so, then the secured creditor could expend funds to cover those items, add the expenditures so made to the principal due, and recover 13%. Paragraph 13 of the deed of trust provides that upon default the secured creditor is entitled to 13% interest on all money advanced for taxes, insurance, and other expenses. Id., p. 108. See Appendix B to appellant’s opening brief.
Pursuant to 28 U.S.C. § 2075, the Supreme Court has prescribed rules by which bankruptcy matters are governed. Bankruptcy Rule 8013, 11 U.S.C., states in part that: “Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.” The Supreme Court has said: “A finding is ‘clearly erroneous’ when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.” United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (interpreting Rule 52(a) Fed.R.Civ.P.). We have interpreted this standard thus: “The bankruptcy court’s findings should not be disturbed absent ‘the most cogent reason appearing in the record.’” In re Reid, 10 Cir., 757 F.2d 230, 233-34.
There is no dispute between the parties as to the mathematical computations but with the interpretations each has made with the terms of the note. R.Vol. I, p. 146. The debtor claim that the amount due on May 24, 1982, the date of the filing of the Chapter 11 proceedings, was $1,723,-770.02, R.Vol. I, p. 148. Travelers claims the amount due was $1,941,199.11. See Exhibits C and D attached to the appellant’s opening brief. An expert witness for the debtor testified that the Travelers’ claim was based on an interest rate of 25.6%. Tr. Vol. Ill, p. 19, and R.Vol. I, p. 146.
The dispute must be resolved under Colorado law. See Deed of Trust, 1119. “Interpretation of contract language is generally a question of law.” Union Rural Elec. Ass’n v. Public Util. Comm., Colo., 661 P.2d 247, 251. Once a contract has been determined to be ambiguous, the meaning of its terms is generally a question of fact to be determined in the same manner as other disputed factual issues. Id., p. 251, n. 5.
The bankruptcy court found, Id., p. 146, that:
“Travelers argues that the note is clear and unambiguous and thus parol evidence is inadmissible to vary its terms, and the debtor agrees with this general statement. But the note was not the entire agreement between the parties. This note was, by its own terms, secured by a deed of trust on the Debtor’s real property.”
The trust deed provides that the debtor shall pay all taxes, fees or charges becoming due, and to keep the property in good repair. Paragraphs 3, 4, 5, and 6 of the trust deed. R.Vol. I, pp. 106-108. If the debtor failed to do so, then the secured creditor could expend funds to cover these items, add the expenditures to the principal due, and recover 13% on the expenditures. In paragraph 13 of the trust deed, it is provided that the secured creditor is entitled to 13% on all moneys advanced for taxes, insurance, and other expenses.
The bankruptcy judge held, R. 146-147, that:
“This agreement of the parties leads the Court to the conclusion that the parties intended that upon default of payments *1459 under the note, the interest would escalate from 11% to 13%, and not that Travelers would be entitled to both percentages. If Travelers had intended to charge 25.6% interest from and after default by the Debtor, it could have easily done so by specific language in the note and deed of trust. Therefore, the Court accepts and adopts the Debtor’s calculations as set forth in Debtor’s Ex. 8 which allows Travelers 13% per annum, compounded monthly.”
The district court agreed with the bankruptcy judge. R.Supp.Yol. I, pp. 3-4, and R.Vol. II, p. 53. We agree. The interpretation which the bankruptcy judge put on the note and trust deed is reasonable and we will not set it aside.
Travelers objects to the bankruptcy judge’s approval of the debtor’s chapter 11 plan of reorganization. R.Yol. I, pp. 23-26. All creditors voting have accepted the debt- or’s plan except Travelers. Id., p. 148. Travelers is a secured creditor holding a trust deed on the real property of the debt- or. The bankruptcy judge noted that Travelers asserts that the plan does not meet the requirements of 11 U.S.C. § 1129(a)(3), (7), (8), and (11), (b)(1) and (b)(2)(A). Id., p. 148.
The plan of reorganization provides, Id., p. 25:
“The Debtor proposes that subject obligation (of Travelers) continue to accrue pursuant to its terms without regular monthly payments of principal and interest for a period of not to exceed three (3) years from the date of confirmation of this Plan....
-In the event that the following does not occur within three (3) years from the date of confirmation (of Reorganization) of the Plan, to-wit: [1] the debt to Travelers Insurance Company having been paid in full or [2] all arrearages satisfied and the loan obligation brought current pursuant to its terms or [3] other financing arrangements satisfactory to Travelers Insurance Company, then the Debtor Corporation shall stipulate and agree to relief from the Stay Against Enforcement of Lien provisions of 11 U.S.C. § 362 for foreclosure of its security interests.”
On conflicting evidence the bankruptcy judge found that the value of the real property, water rights, wells, pumping equipment, and transmission facilities owned by the debtor is $3,500,000.00. Id., p. 152. He also found, Id.:
“Travelers will receive, under the plan, the full amount of its claim by deferred cash payments at an interest rate of 13% (the default interest rate in its contract with the Debtor) compounded monthly. This yrould amount to $2,887,416.83 as of June 1, 1986, the contemplated completion date of this plan.”
We have approved the 13% interest rate.
The bankruptcy judge held, R. 148:
“Travelers asserts that the plan does not meet the requirements of 11 U.S.C. §§ 1129(a)(3), (7), (8), and (11); (b)(1), (b)(2)(A). There is no dispute that the Debtor has met all the other requirements of § 1129.”
We limit our discussion to the points raised before the bankruptcy court. See Gundy v. United States, 10 Cir., 728 F.2d 484, 488.
Section 1129(a)(3) requires that the plan has been proposed in good faith. The bankruptcy court said, Id., pp. 154-55:
“The test of good faith is met if there is a reasonable likelihood that the plan will achieve its intended results which are consistent with the purposes of the Bankruptcy Code, that is, is the plan feasible, practical, and would it enable the company to continue its business and pay its debts in accordance with the plan provisions. The Court finds that, under all the evidence in the case, the plan does meet these standards and has been proposed in good faith.”
The bankruptcy court found that the value of the debtor’s property was $3,500,-000.00 and that the value of the Travelers’ claim as of June 1, 1986, the contemplated completion date of the plan, was $2,887,-416.83. Id., p. 152. Travelers was adequately protected.
*1460 In finding a lack of good faith, courts have looked to whether the debtor intended to abuse the judicial process and the purposes of the reorganization provisions. See In Re Albany Partners Ltd., 11 Cir., 749 F.2d 670, 674. Not confirming the plan for lack of good faith is appropriate particularly when there is no realistic possibility of an effective reorganization and it is evident that the debtor seeks merely to delay or frustrate the legitimate efforts of secured creditors to enforce their rights. However, such is not the case here. The bankruptcy judge wrote: “The evidence in this case establishes that there is substantial growth and development in the area of the Debtor’s property and that there is a concomitant increase in demand for municipal water_ [T]he evidence clearly established that there are other profitable markets available for the Debtor’s water.” R.Vol. I, p. 154. With these words in mind, we cannot agree with the assertion of the secured creditor that the debtor’s plan was not proposed in good faith. We therefore affirm the determination of the bankruptcy judge on this point.
Section 1129(a)(7) requires that each creditor receive under the plan property that has a value, as of the effective date of the plan, that is not less than the amount such creditor would receive if the debtor’s assets were liquidated under Chapter 7 of the bankruptcy code. The assertion of Travelers that the plan fails to meet these requirements is based on its valuation of the debtor’s assets. The bankruptcy court fixed them at approximately $600,000.00 more than the claim. This was a finding of fact which we cannot disturb under the Supreme Court’s Bankruptcy Rule 8013 unless clearly erroneous. We do not think them clearly erroneous. The requirement of § 1129(a)(7) was met.
Section 1129(a)(ll) requires:
“Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.”
In re Pizza of Hawaii, Inc., 9 Cir., 761 F.2d 1374, 1382, says, citing Collier on Bankruptcy ¶ 2239.02[11] at 1129-34 (15th ed. 1984):
“The purpose of section 1129(a)(ll) is to prevent confirmation of visionary schemes which promises creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation.”
In determining whether a plan meets the requirements of § 1129(a)(11), In re Monnier Bros., 8 Cir., 755 F.2d 1336, 1341, says:
“[I]n determining whether [a plan] is feasible, the bankruptcy court has an obligation to scrutinize the plan carefully to determine whether it offers a reasonable prospect of success and is workable.” (Quoting United Properties, Inc. v. Emporium Department Stores, Inc., 8 Cir., 379 F.2d 55, 64.)
The bankruptcy court found the plan feasible and practical, Id. 154, and the district court agreed. Supp.Yol. I, p. 6. We also agree.
Travelers argues that the plan fails to meet the requirements of § 1129(a)(8) and (b)(2)(A). Paragraph (b)(1) of § 1129 excepts § 1129(a)(8) from its requirements. Hence, it is not mandatory. In re Butler, Bkrtcy.E.D.Ark., 42 B.R. 777, 784. In re Hoffman, Bkrtcy.D.N.Dak., 52 B.R. 212, 215, says:
“A court is allowed to confirm a plan under section 1129(b) if it determines that the plan does not discriminate vun-fairly, is fair and equitable with respect to each class of impaired claims or interests which have not accepted the plan, and all provisions of section 1129(a) except for paragraph (8) have been met.”
Section 1129(b)(2)(A)(iii) requires that secured creditors receive the indubitable equivalent of their claims. It is said in In re American Mariner Industries, Inc., 9 Cir., 734 F.2d 426, 432, that Congress derived the term “indubitable equivalent” *1461 from Judge Learned Hand’s opinion in In re Murel Holding Corp., 2 Cir., 75 F.2d 941. In re Murel was an appeal from the denial of a stay and In re American Mariner Industries involved an under secured creditor. Neither squares with the issues presented to us. In re Hollanger, Bank, W.D.La., 15 B.R. 35, 46-47, says:
“... the dissenting secured claimant will be receiving the ‘indubitable equivalent’ ... Stated another way, where a dissenting claimant is receiving payment in full over a reasonable period of time, with an appropriate interest or discount factor being paid, that creditor is receiving all the law requires, that is, ... full payment over a reasonable period of time.”
We agree. In the case at bar, the value of the property is more than $600,000.00 greater than the Travelers’ claim as determined by the bankruptcy judge. It will receive the “indubitable equivalent” of its claim. The requirement of § 1129(b)(2)(A)(iii) has been met.
The bankruptcy court and the district court have both held that the plan is feasible, fair, and equitable. We agree.
Affirmed.