**In re WESTERN REAL ESTATE FUND, INC., Oil Center Investments, First Western Income Realty Trust, Second Western Income Realty Trust, Western Institutional Properties Trust, Nantucket Joint Venture, Landsing Diversified Properties–II, LDP II Acquisition Corp., Oaks of Cypress Station, Ltd., Willowick Investors, Ltd., Watervleit-One Company, Ltd., and Watervleit-Two Company, Ltd., Debtors.**

**Bankruptcy No. 86–05387–B.**

United States Bankruptcy Court,
W.D. Oklahoma.

June 30, 1987.

Jack L. Kinzie, Bobbie T. Shell of Andrews Davis Legg Bixler Milsten & Murrah, Oklahoma City, Okl., and Kenneth N. Klee of Stutman, Treister and Glatt, Los Angeles, Cal., for debtors.

Lyle S. Vaughn of Crowe & Dunlevy, Oklahoma City, Okl., and Harvey S. Schochet of Steefel, Levitt & Weiss, San Francisco, Cal., for Capitol Holding Corp.

Warren D. Majors of Spradling, Alpern, Friot & Gum, Oklahoma City, Okl., for Travelers Ins. Co., Inc.

V. Burns Hargis and Ross A. Plourde of Reynolds, Ridings & Hargis, Oklahoma City, Okl., for Transamerica Occidental Life Ins. Co. and General American Life Ins. Co.

Irving Sulmeyer of Sulmeyer, Kupetz, Baumann & Rothman, Los Angeles, Cal., for Transamerica Occidental Life Ins. Co.

Robert D. McCutcheon of Crowe & Dunlevy, Oklahoma City, Okl., for New York Life Ins. Co., American General Life and Acc. Ins. Co. and Norwest Mortg., Inc.

Andrew J. Petrie of Kirkland & Ellis, Denver, Colo., for Dollar Dry Dock Sav. Bank of New York.

John W. Swinford, Jr., of Hastie and Kirschner, Oklahoma City, Okl., for the Creditors Papadopoulus and Walnut Investments, Ltd.

Thomas M. Atkinson, Tulsa, Okl., for Pacific Mut. Life Ins. Co.

Christopher L. Coyle of Robinson, Boese, Orbison & Lewis, Tulsa, Okl., for Bank of Oklahoma, Tulsa, N.A.

Lynn A. Pringle and Marianne Blackwell of Jones, Blaney and Pringle, Oklahoma City, Okl., for L. Scott Turner.

Stephen J. Moriarity of Edwards, Roberts & Propester, Oklahoma City, Okl., for New England Mut. Life Ins. Co.

John E. Howland of Rosenstein, Fist & Ringold, Tulsa, Okl., for Textron Collective Inv. Trust.

Judith Elkin of Haynes and Boone, Dallas, Tex., for First Bankers Trust and Sav. Ass'n.

Louis J. Price, Stephen W. Bugg of McAfee & Taft, Oklahoma City, Okl., and Kathleen T. Lax of Gibson, Dunn & Crutcher, Los Angeles, Cal., for Cedra Properties, Inc.

Steven Minty, Norman, Okl., for Kevin M. Abel, and Abel and Busch, Inc.

G. Blaine Schwabe, III of Mock, Schwabe, Waldo, Elder, Reeves & Bryant, Oklahoma City, Okl., for First Interstate Bank of Denver, N.A.

Timothy Kline and Mark E. Monford of Kline & Kline, Oklahoma City, Okl., for American Sav. Bank.

Neal Tomlins of Baker, Hoster, McSpadden, Clark, Rasure & Slicker Tulsa, Okl., for Sooner Federal Sav. and Loan Ass'n.

Lance Stockwell of Boesche, McDermott & Eskridge, Tulsa, Okl., for First Nat. Bank of Tulsa.

Charles R. Underwood of Kornfeld, Franklin & Phillips, Oklahoma City, Okl., for the Ocheltree Trust, the Estate of Clarice Ocheltree, and Charles and Sylvia Mays.

## MEMORANDUM DECISION AND ORDER

PAUL B. LINDSEY, Bankruptcy Judge.

The instant proceedings were initiated by these debtors in possession by the filing for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 1101 et seq. These cases have been consolidated for administrative purposes. The debtors in possession have submitted plans of reorganization.[1] After notice and a hearing on the confirmation of these proposed plans, the court finds as follows.

Those debtors in possession which the court will denominate as the Western Real Estate Fund, Inc. ("WREF") debtors, were formed with the intention of investing in income-producing properties located in markets in the Southwest and Western United States. The initial objectives consisted of appreciation in the value of acquired properties and the distribution of cash. The debtors expected to pay cash distributions to investors from the operation of the properties and from the proceeds from the sale of the properties.

The objectives of those debtors which the court will denominate as the LDP II debtors differed somewhat from those of the WREF debtors. However, they too sought to invest in properties in the Southwest and Western United States. The objectives of the LDP II debtors consisted of the preservation of invested capital, capital appreciation through the value added to properties, tax losses to offset taxable income from other sources, and the distribution of cash in the later years of operation.

The debtors are engaged in the ownership and/or management of various commercial and multi-unit residential properties located in Oklahoma, Texas and Colorado. The commercial properties include office buildings, shopping centers and office/industrial complexes. The debtors also own agricultural property located in California.

The hearing on the confirmation of these proposed plans proceeded in a bifurcated manner. The first week of the hearing was devoted to valuation of the respective properties pursuant to 11 U.S.C. § 506 and to determining the plan rate of interest. At the conclusion of that hearing the court determined the value of those properties the value of which had not been stipulated to by the parties and ruled that the appropriate plan rate of interest would be nine percent.

The second phase of the confirmation hearing dealt with the requirements of 11 U.S.C. § 1129. The court notes that prior to, during and to an extent following the conclusion of the confirmation proceedings, a substantial number of the secured creditors reached accommodations with the debtors and withdrew their opposition to confirmation of the respective plans.

With respect to the requirements of § 1129, the court was provided a wide variety of expert testimony, all of which was of a high caliber. The manners in which the parties presented their positions may be rather simplistically characterized as following one of two approaches. The debtors' witnesses, generally speaking, approached the plans of reorganization in a broad, macroeconomic sense. This is not to say that they failed to address themselves to the specific proeprties. However, the debtors' witnesses concentrated on long-range economic forecasts and trends, not only for the communities, states and regions in which the properties were located but for the country as a whole. The testimony offered on behalf of the objecting

---

1.  First Western Income Realty Trust,
    Second Western Income Realty Trust,
    Western Institutional Properties Trust,
    Oil-Center Investments,
    Nantucket Joint Venture,
    Watervleit-One Company, Limited,
    Watervleit-Two Company, Limited, and

Willowick Investors, Ltd. have filed their plan of reorganization.
Landsing Diversified Properties-II,
LDP II Acquisition Corp., and
The Oaks of Cypress Station, Ltd. have filed their plan of reorganization.

secured creditors may be characterized, once again rather simplistically, as offering a microeconomic perspective. These witnesses concentrated on the specific properties, while addressing to a lesser degree, factors of local, regional and national concern.

During the course of the hearing the court was inundated with charts, graphs, computer print-outs and expert opinions related to economic forecasts, projections, models and the like, related to micro- and macroeconomic trends and cycles, interest, discount and capitalization rates, occupancy and growth rates, inflation rates, and other complex technical subjects and concepts. Not surprisingly, the projections of the debtors' witnesses supported the proposed plans of reorganization, while the objecting secured creditors' witnesses found such projections, and hence the proposed plans, to be at best unrealistic.

Application and interpretation of the law is an art, not a science. The donning of a judicial robe confers authority and responsibility, not omniscience. This court can no more see into and predict the future with absolute certainty than can any of the parties or their expert witnesses. The Bankruptcy Code, however, favors providing debtors an opportunity to reorganize, to be given a fresh start, and unless the court can say with a greater degree of certainty than is possible here, that debtors' projections are unreasonable and cannot be met, these debtors should be afforded that opportunity.

In discussing economic projections with respect to a confirmation hearing concerning a farming operation, a business fraught with uncertainty, the Court of Appeals for the Eighth Circuit has stated: "Projecting future income of, and expenses of, an extensive farming operation such as debtors' cannot be an exact science." *Prudential Insurance Company of America v. Monnier (In re Monnier Bros.),* 755 F.2d 1336, 1341 (8th Cir.1985). That statement has equal applicability here, where there are involved multiple parcels of improved real property of various types in diverse geographic locations.

■ The court must first find whether the plans comply with the requirements of § 1129(a).

The first two requirements of subsection (a) are that the plan and its proponent comply with the applicable provisions of title 11. The objecting secured creditors contend that the plans do not so comply, the basis of their argument being the provisions for the post-confirmation sale of the properties subject to § 363(k) of the Code. They contend that, since the plans do not provide for the continuation, post-confirmation, of debtor-in-possession status for the debtors, under § 1141(b) the properties will no longer be "property of the estate" and § 363 will thus no longer be available to govern their sale. This contention, and its implications will be discussed hereafter in the context of § 1129(b). At this juncture, however, the court declines to find the plans to be violative of the provisions of the Code. Thus, this court finds that the requirements of §§ 1129(a)(1) and (2) are met as to each of the plans in question here.

Section 1129(a)(3) requires that the plans must have been proposed in good faith and not by any means forbidden by law. The Tenth Circuit has had occasion to address this issue. In *Travelers Insurance Company v. Pikes Peak Water Company (In re Pikes Peak Water Co.),* 779 F.2d 1456, 1459 (10th Cir.1985), the court said:

> In finding a lack of good faith, courts have looked to whether the debtor intended to abuse the judicial process and the purposes of the reorganization provisions. *Not confirming the plan for lack of good faith is appropriate particularly when there is no realistic possibility* of an effective reorganization and it is evident that the debtor seeks merely to delay or frustrate the legitimate efforts of secured creditors to enforce their rights. (emphasis supplied.)

Viewing the proposed plans herein in light of the court's statements, it is clear, and this court so finds, that the proposed plans have been filed in good faith.

With respect to § 1129(a)(4), (5) and (6)[2] the court finds that the requirements contained therein, to the extent the same are applicable, have been satisfied.

Paragraph (7) of subsection (a) incorporates the "best interest of creditors" test and requires that with respect to each impaired class, the class must unanimously accept the plan or each holder of a claim within the class must receive under the plan at least what such holder would receive under a chapter 7 liquidation. Should, however, the class exercise the § 1111(b)(2) election, the class must receive property with a present value equal to the value of the secured claims of the class. Although compliance with this requirement has been questioned by the objecting secured creditors, the positions taken relate largely to the adequacy of the plan interest rate, which the court has heretofore fixed. The court finds the contentions of the objecting secured creditors to be without merit and that the requirements of § 1129(a)(7) have been satisfied.

Inasmuch as this court is being requested to confirm these plans of reorganization pursuant to § 1129(b), compliance with paragraph (8) of subsection (a), which requires that each class must either accept the plan or be unimpaired, is not required. It is noted, however, that of the 31 impaired classes of secured claims included in these plans, among whom initial objection to the plans was virtually unanimous, only four objected to confirmation of the plans at the confirmation hearing. At least one of these creditors has since settled with debtors.

Paragraph (9) of subsection (a) addresses the payment of administrative claims entitled to priority. The court finds the requirements therein to be satisfied by the proposed plans of reorganization.

Paragraph (10) of subsection (a) requires that if a class is impaired under the plan, at least one impaired class of claims must accept the plan. This brings the court to the contention of Transamerica Occidental Life Insurance Company ("Transamerica") in the Oaks of Cypress Station, Ltd. bankruptcy. Transamerica contends that it is the sole impaired class in that case, and that since it has not voted to accept the plan, the plan may not be confirmed. Transamerica has strenuously urged that the claim of the C.N.P. Utility District ("C.N.P.") should be disallowed, as should the compromise the debtor entered into with C.N.P. concerning the debtor's objection to its claim. Transamerica has urged that such compromise was effected for the sole purpose of obtaining the consent of an impaired class.

The court need not, and does not, reach the issue of whether C.N.P. is an impaired, accepting creditor in the Oaks of Cypress Station, Ltd. bankruptcy. As was noted during the course of closing argument, subsequent to the filing of this case, the only other partner in the Oaks of Cypress Station transferred its limited partnership interest to Landsing Diversified Properties–II ("LDP–II"). With this transfer, LDP–II became the sole partner. It is

2. Which subsections provide:

(4) Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable;

(5)(A)(i) The proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan; and

(ii) the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy; and

(B) the proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider.

(6) Any governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval.

11 U.S.C.A. § 1129(a)(4), (5), (6) (West 1979 and Supp.1987)

fundamental partnership law that a partnership cannot exist with only one partner. The Oaks of Cypress thus was merged into LDP–II, and there are numerous other impaired accepting classes in the LDP–II plan. This being the only challenge to compliance with § 1129(a)(10), the court finds that that provision has been satisfied.

The last requirement under § 1129(a) with which the court must be concerned is whether the plan is feasible. Section 1129(a)(11) requires the court to find that: "Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S. C.A. § 1129(a)(11) (West 1979 and Supp. 1987).

"The purpose of section 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation." *Travelers Insurance Company v. Pikes Peak Water Company (In re Pikes Peak Water Co.)*, 779 F.2d 1456, 1460 (10th Cir.1985) (quoting 5 *Collier on Bankruptcy* ¶ 1129.02, at 1129–36.11 (15th ed. 1979)). Although none of the objecting creditors has specifically referred to the proposed plans as "schemes," the court feels secure in characterizing the view of the proposed plans by these creditors as "visionary" at the very least.

Without question, the projections propounded by the debtors are, as described by creditor witness and counsel, "aggressive." Nonetheless, as has been stated previously, upon balancing all the testimony, evidence and documentation, the court finds that the forecasts and projections of the debtors, in the context of these proposed plans, are credible. The Tenth Circuit, in *Pikes Peak Water Company*, 779 F.2d at 1460, has noted that "[i]n determining whether [a plan] is feasible, the bankruptcy court has an obligation to scrutinize the plan carefully to determine whether it offers a *reasonable prospect of success* and is workable." (quoting *Prudential In-*

*surance Company of America v. Monnier (In re Monnier Bros.)*, 755 F.2d 1336, 1341, (8th Cir.1985)) (emphasis supplied). "Success need not be guaranteed." *In re Monnier Bros.*, 755 F.2d at 1341.

Debtors are not required to view business and economic prospects in the worst possible light, just as creditors are not required to view proposed plans through rose-colored glasses. In all the circumstances, the court finds that these plans are feasible, and that the requirements of § 1129(a)(11) thus have been met.

This brings the court to the crucial issue with respect to these plans of reorganization; whether they may be confirmed over the objection of the objecting secured creditors pursuant to 11 U.S.C. § 1129(b). Compliance with subsection (b) is necessary only as to those classes which have not accepted the plans. Those secured creditors who have settled and, in furtherance of such settlement, have voted to accept their treatment under the plan, may not be heard to complain.

The "cram down" provision, § 1129(b), provides that if all of the applicable requirements of § 1129(a) except paragraph (8) are met with respect to a plan, the court, upon request by the proponent of the plan *shall* confirm the plan notwithstanding the requirements of § 1129(a)(8) if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

At closing argument much was made of how these plans of reorganization are allegedly discriminatory since not all secured creditors are treated alike. The argument of the objecting creditors was to the effect that those creditors who have settled with the debtors were obtaining more favorable treatment than those creditors who have not settled.

These plans of reorganization provide for similar treatment for the allowed claims of secured creditors, who are collectively designated as class 4 claimants. Such treatment includes the issuance of a "plan note," an instrument of indebtedness to be delivered to the holders of allowed class 4

claims. All objecting creditors are class 4 claimants. Since each claim differs either as to property or priority, each has been classified separately. Thus, each allowed secured claim is in a class by itself, and the argument that members of the same class may be treated unevenly has no merit.

■ Moreover, that those creditors which have reached an accomodation with the debtors and have now accepted the plans are to receive differing treatment from that of the remaining creditors, does not constitute impermissible discrimination. This is so for two reasons. Discrimination is prohibited in the context of § 1129(b), which is applicable only with respect to an impaired class which *has not accepted* the plan. Once a class has accepted, it is no longer utilized in a comparison for purposes of determining the existence or non-existence of discrimination *between* classes. Further, to hold as the objecting creditors suggest would discourage and remove any incentive for negotiation and resolution of differences prior to confirmation. Since the court believes that such "work outs" are fundamental to effective reorganization and rehabilitation, whether or not under the protections of bankruptcy law, the position urged by the objecting creditors cannot be accepted.

The condition that a plan be fair and equitable with respect to a class of secured claims includes the requirements: That the plan provides that the holders of such claims retain the liens securing them, to the extent of the allowed amount thereof, and that each such holder receive deferred cash payments totalling at least the allowed amount of the claim, of a value, as of the effective date of the plan, of at least the value of the holder's interest in the estate's interest in the property; that the plan provides for the sale, subject to § 363(k), of any property that is subject to the liens securing the claims, free and clear of such claims, with the liens attaching to the proceeds of such sale; or that the plan provides for the realization by the holders

of such claims of the indubitable equivalent thereof. § 1129(b)(2)(A).

■ The objecting creditors contend that the proposed plans may not be found to be fair and equitable, *inter alia,* because they provide for *both* a stream of deferred cash payments *and* the post-confirmation sale of the properties. It is the creditors' contention that the provisions of § 1129(b)(2)(A), outlined above, are mutually exclusive, and that debtors may not combine two or more of the stated requirements in a single plan. Such simply is not the case.

Section 102 of the Bankruptcy Code, 11 U.S.C.A. § 102 (West 1979), provides non-exclusive rules of construction for certain words and phrases employed in the Code. As applicable to the contentions of the objecting creditors herein, subsection (3) states that "includes" and "including" are not limiting and subsection (5) provides that "or" is not exclusive. The former is said to be a codification of *American Surety Co. v. Marotta,* 287 U.S. 513, 53 S.Ct. 260, 77 L.Ed. 466 (1933), and the latter makes it clear that if an alternative is provided in the disjunctive, a party may employ either or both alternatives and is not limited to a mutually exclusive choice between the two. H.R.Rep. No. 595, 95th Cong., 1st Sess. 316 (1977); S.Rep. No. 989, 95th Cong., 2nd Sess. 28 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5813, 6273.

Thus, a combination of deferred payments and a post-confirmation sale in the proposed plans does not prevent the same from meeting the "fair and equitable" test of § 1129(b).

These proposed plans contemplate doing exactly what the business of the debtors was in the first instance; i.e., buying properties, operating them, and ultimately selling them, hopefully at a profit.

■ The objecting creditors next contend that they are not being allowed to retain the liens securing their claims. The creditors argue that the terms of the plan note [3]

3. The pertinent provisions of the plan note are set out in Article III, § 3.04 of each of the plans, as follows:

(1) The Company shall have 30 days within which to cure any monetary default.

deprive them of their bargained-for rights against debtors and the property securing their debt instruments to such an extent as to constitute a deprivation of their respective liens, and of their constitutionally protected property rights under the Fifth Amendment to the United States Constitution. This court does not agree.

It is clear that the terms of the plan note, as compared to the terms and conditions of the respective debt instruments originally executed by the debtors to the various creditors, are far less stringent with respect to the rights of creditors in certain circumstances. Such modifications, however, in the opinion of this court, neither individually nor collectively rise to the level of a deprivation of the creditor's lien securing its claim.

Specifically, the court finds the reliance by the objecting creditors upon *Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935), to be misplaced, particularly in light of the subsequent decisions of the United States Supreme Court in *Wright v. Union Central Life Insurance Co.,* 311 U.S. 273, 61 S.Ct. 196, 85 L.Ed. 184 (1940), *Wright v. Union Central Life Insurance Co.,* 304 U.S. 502, 58 S.Ct. 1025, 82 L.Ed. 1490 (1938) and *Wright v. Vinton Branch of the Mountain Trust Bank of Roanoke,* 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736 (1937). The three *Wright* cases have been said to substantially limit *Radford* as a statement

concerning the constitutional rights of secured creditors. 2 *Collier on Bankruptcy* ¶ 362.01, at 362–12 et seq. (15th ed. 1979).

The court further notes its disagreement with and disinclination to follow *In re Hoffman,* 52 B.R. 212 (Bankr.D.N.D.1985), with particular reference to the *Hoffman* court's application of an adequate protection standard to post-confirmation matters. *See Prudential Insurance Company of America v. Monnier (In re Monnier Bros.)* 755 F.2d 1336, 1340 (8th Cir.1985).

In summary, it is this court's view that holders of secured claims receiving a plan note in the allowed amount of their respective claims are not deprived of the liens securing such claims by reason of the modification in the plan note of the terms and conditions of the original instruments entered into between the parties.

■ Each of the proposed plans of reorganization provide, in Article II, § 2.08, for Class 7 claims, to consist of "all other unsecured Allowed Claims against each Debtor." In Article III, at § 3.08 of each plan, it is provided that: "Each holder of a Class 7 Claim shall receive a Creditor Debenture, the principal amount of which shall equal the holder's Class 7 Claim." In the WREF plan, the holder of a Class 7 claim may at its option elect preferred stock in lieu of a creditor debenture. The

(2) The Company shall have 30 days after written notice of the default to cure (or to begin within that 30–day period and diligently pursue thereafter to cure) any non-monetary default.

(3) The Plan Note shall not have any prepayment penalties.

(4) The Plan Rate of Interest shall serve in lieu of any default rate of interest or late payment charges.

(5) No non-monetary default shall constitute a material default unless it endangers the Lender's collateral.

(6) The Company shall not have any obligation to insure the collateral in excess of the full replacement cost of the property, and the Company shall have the option to rebuild or repair the property or pay off the Lender's note in the event of any loss.

(7) Neither the Lender nor any other person shall maintain any impounds for taxes or insurance.

(8) With regard to any provisions requiring the Lender's consent, the Lender shall not withhold its consent unreasonably (and, for the purposes of this paragraph, a withholding of consent shall constitute a reasonable withholding only if the proposed activity would have a materially adverse effect on the Lender's collateral).

(9) The Company shall have the right to contest all liens.

(10) The Company shall have the right to further encumber the property securing the Plan Note.

(11) The law of Oklahoma shall prevail in determining any substantive matter.

(12) With the exception of the reports specified below, the Company shall not have any reporting obligations to the Lender.

existence of this election, however, is not material to this discussion.

The term "Creditor Debenture" is defined in Article I, § 1.13 in the WREF plan and 1.12 in the LDP–II plan, as meaning evidences of indebtedness of the surviving company or partnership, as the case may be, issued to the holders of Class 7 claims in the principal amount of the Class 7 claim; to bear interest at the rate of ten percent per annum; interest to become due and payable periodically from fifty percent of aggregate cash flow as defined in the plans; earned but unpaid interest to be added to the principal balance at the end of each calendar year; the term of the debenture to run for ten years from the effective date; and to have a liquidation preference subordinate only to the claims of any senior class of claims.

Under 11 U.S.C. § 506(a), a secured creditor has a secured claim to the extent of the value of the creditor's interest in the estate's interest in the property; and an unsecured claim to the extent that the value of the creditor's interest is less than the amount of the total allowed claim. In other words, the claim of an undersecured creditor is bifurcated, a secured claim being allowed in Class 4 to the extent of the court's valuation of the property and an unsecured claim being allowed for the amount by which the total claim of the creditor exceeds the § 506(a) value. It is these unsecured components of claims which fall within Class 7 under each of the plans before the court.

Under § 1111(b)(1)(A), claims secured by liens on property of the estate, whether recourse or non-recourse, are treated as though they were recourse claims, unless an election is made under § 1111(b)(2) or, if the claim is in fact non-recourse, the property "is sold under section 363 of this title or is to be sold under the plan."

If the § 1111(b)(2) election is made, an allowed claim is a secured claim to the full extent the claim is allowed, notwithstanding the valuation of the security under § 506(a). A class of secured claims may not elect under § 1111(b)(2) if the interest on account of the claims of the holders of such claims in such property is of inconsequential value or if the holder of the claim has recourse and the property is sold under § 363 or is to be sold under the plan.

Each of the plans before the court provides for the sale of all properties subject to Class 4 claims after confirmation and provides that such sale shall be pursuant to 11 U.S.C. § 363(k).[4] The legislative history of § 363(k) indicates that a secured creditor may bid in the full amount of his allowed claim, including both the secured and unsecured portion thereof, upon the sale of the property under § 363(b). 124 Cong.Rec. H 11,093 (daily ed. September 28, 1978); S17409 (daily ed. Oct. 6, 1978)

The plans before the court, while mandating the sale of all properties, are totally without specificity as to the details of the sale, including when the sale must take place, the identity of the purchaser and the price to be obtained. While the debtors, by capitalizing their projections of future income, have generated projections of future values for each of the properties, the plans do not require, or commit the debtors to, the sale of any property at any particular price or at or before the date for which the projected future valuation is made.

Thus, the debtors, by the simple expedient of requiring the sale of all properties after confirmation, have deprived non-recourse creditors of the preferred status of recourse treatment which would otherwise be conferred upon them by § 1111(b)(1)(A). The loss of this "conversion" to recourse treatment, in turn, means that the undersecured non-recourse creditor remains non-recourse, has no unsecured component to its claim and is limited to the secured claim to the extent of the § 506(a) value assigned to the property by the court. Thus, such a

---

**4.** Which subsection provides:

At a sale under subsection (b) of this section of property that is subject to a lien that secures an allowed claim, unless the court for cause orders otherwise the holder of such claim may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property.

11 U.S.C.A. § 363(k) (West 1979 & Supp.1987)

creditor has no Class 7 claim and is not entitled to a Creditor Debenture.

This result is wholly lacking in fairness. Debtors should not be permitted to deprive objecting non-recourse undersecured creditors of the valuable rights which would be conferred upon them under § 1111(b)(1) by simply providing for the sale of the property at some unspecified future time, to some unspecified purchaser, at an unspecified price and on unspecified terms.

Based upon the foregoing, it is this court's opinion that where the provision for the sale of property securing a lien, the holder of which does not have recourse against the debtor, is as wholly lacking in specificity as is the case here, the exception contained in § 1111(b)(1)(A)(ii) may not be found to be applicable and the claim must therefore be treated as if the holder had recourse against the debtor unless the class, by the requisite amount and number, makes the § 1111(b)(2) election. In the absence of such an election, such a claim must be accorded an unsecured component in the amount by which the total allowed claim exceeds the § 506(a) valuation of the property. Such unsecured component will constitute a Class 7 claim and will be entitled to the issuance of a Creditor Debenture as provided for in the plans.

The court is not required to, and does not, determine the length of time which may be allowed to transpire after confirmation before a proposed sale or the degree of specificity required in the terms and conditions of any proposed sale in order to permit the application of the § 1111(b)(1)(A)(ii) exception to the "preferred status" afforded by § 1111(b)(1)(A). It simply holds that the total lack of specificity here is insufficient.

Similarly, the court declines to hold that a sale pursuant to § 363 may not be effected after confirmation. The court notes that the language "is sold under section 363 of this title or is to be sold under the plan," which appears twice in § 1111(b), could be said to support a determination that, at the very least, the draftsman recognized a distinction between the current sale of property under § 363 and a prospective sale under the plan.

In § 1129(b)(2)(A)(ii), however, it is provided that the condition that a plan be fair and equitable with respect to a class of secured claims may be met if *the plan provides for the sale of property under § 363(k)*. This language, which can refer only to a prospective sale under the plan, assumes the applicability of § 363 to any such sale.

The legislative history of §§ 1111(b) and 1129(b) make it clear that they are to be considered together, and in conjunction with § 1129(a)(7), in connection with the confirmation of plans of reorganization. 124 Cong.Rec. H11,103 (daily ed. September 28, 1978); S1742 (daily ed. October 6, 1978). It is equally clear that the draftsmen considered the protections of § 363(k) and of the § 1129(b)(2) election to be sufficient to warrant exceptions to the "preferred status" accorded otherwise non-recourse undersecured creditors under § 1111(b)(1).

What is not addressed, either in the statute or in the legislative history, is the apparent inconsistency regarding the applicability of § 363 to post-confirmation sales of property. As has been alluded to herein, under § 1141(b), "the confirmation of the plan vests all of the property of the estate in the debtor," while § 363(b) appears to govern the sale or lease, other than in the ordinary course of business, only of property of the estate.

The objecting creditors note that a sale pursuant to § 363(b) may be effected only after appropriate notice and at least the opportunity for a hearing at which the fairness and adequacy of the sale and its conditions may be adjudicated by the court. They also point out that a sale under the plan need not afford interested parties any of those protections.

Even though the statute and the legislative history may contain inconsistencies in this area, it is not necessary that this court, in the context of these plans, undertake to resolve the same.

The objecting secured creditors have moved the court to reconsider its earlier

determination that the plan rate of interest should be nine percent. The court has considered the motion and, being fully advised, declines to take such action.

In summary, the court has held herein that the plans of reorganization proposed by debtors herein meet each of the requirements of § 1129(a), except pararaph (8) thereof. The court has held that the "cram-down" requirements of § 1129(b) are likewise met as to the objecting creditors, with one exception: The plans cannot be found to be fair and equitable as to non-recourse undersecured creditors when the wholly unspecific provision for post-confirmation sales of properties purport to deprive such creditors of the preferred status of recourse claimants otherwise available under § 1111(b)(1). Such creditors must be given the opportunity to make the § 1111(b)(2) election and in the absence of such election, must be afforded recourse status under § 1111(b)(1), given an unsecured component to their claims under § 541(a) and provided a Creditor Debenture to the extent of such unsecured component.

Debtors shall, within fifteen days of the date hereof, file amendments or modifications to their respective plans so that the same will comport with the foregoing findings and conclusions of the court. Debtors shall also provide the court with evidence of their ability to meet the additional financial requirements implicit in the implementation of the modifications or amendments. In the absence of filing and provision by the debtors as aforesaid, the court will enter an order declining to confirm the plans of reorganization as to the non-recourse undersecured creditors who have objected to confirmation. Upon compliance with the requirements hereof, the court will enter its order confirming the plans of reorganization as presently constituted and establishing the Effective Date of each of the plans as June 30, 1987.

Pursuant to Rule 7052, Fed.R.Bankr.P., the foregoing comprise the findings and conclusions of the court.