**In re GEORGETOWN PARK APARTMENTS, LTD., a California Limited Partnership, Debtor.**

**88–09901–LM11.**

United States Bankruptcy Court, S.D. California.

June 30, 1989.

Richard W. Esterkin, Gendel, Raskoff, Shapiro & Quitnner, Los Angeles, Cal., for First City.

Ross M. Pyle, Jennings, Engstrand & Henrikson, San Diego, Cal., for debtor.

Larry Remy, San Diego, Cal., U. S. Trustee.

LOUISE DeCARL MALUGEN, Bankruptcy Judge.

This matter is before the Court on the First City Bank of Austin, Texas ("First City") objections to the debtor's Third Amended Disclosure Statement. Among the objections raised, First City argues that this Court should not approve the disclosure statement for the reason that the proposed plan is not confirmable as a matter of law because it deprives First City of the unsecured recourse claim for its deficiency which I § 1111(b)(1)(A) gives to undersecured creditors.

The facts are not in dispute. The debtor owns an apartment building in a suburb of Austin, Texas, for which (for a variety of reasons) it likely overpaid. According to the debtor, the fair market value of the property is $2.4 million; the debt to First City in excess of $2.8 million. The debtor's plan is to hold the property until May 1993 when, it conjectures the value of the property will be between $3.2 and $3.6 million. The plan provides that, "the Debtor shall sell the Property at a private sale upon noticed motion and court approval on or before May 30, 1993." (Second Amended Plan dated June 2, 1989, p. 11:15–16) Until the property is sold, the debtor proposes to pay First City monthly payments having a present value of its allowed secured claim, as determined by this Court. When the property is sold, First City may bid in its total claim, including its deficiency. Otherwise, the plan has no provision for payment of First City's deficiency claim which would ordinarily be treated as an unsecured recourse claim under § 1111(b)(1)(A).

The debtor claims that it need not provide for First City's deficiency claim because of the exception found in subsection (ii) of § 1111(b)(1)(A) which states that when collateral is being sold under § 363 or pursuant to the plan, a non-recourse lender will not be permitted to assert a recourse claim for its deficiency.

First City contends that the sale proposed by the debtor does not entitle the debtor to rely upon the § 1111(b)(1)(A)(ii) exception because it is not the type of sale contemplated by that section. It argues that the debtor's plan impermissibly deprives it of the unsecured recourse claim which § 1111(b)(1)(A) would otherwise allow.

The question of what qualifies as a sale pursuant to § 363 or under a plan has not been discussed much in prior cases. The only case directly addressing whether a proposed post-confirmation sale was sufficiently certain to deprive an undersecured creditor of its recourse claim is *In re Western Real Estate Fund, Inc.*, 75 B.R. 580 (Bankr.W.D.Okla.1987). In refusing to confirm the plans in that case, the bankruptcy court criticized the plans of related Chapter 11 debtors which, . . .:

While mandating the sale of all properties, are totally without specificity as to the details of the sale, including when the sale must take place, the identity of the purchaser and the price to be obtained. *Id.* at 588.

The debtor responds that its plan is different from that proposed in Western Real Estate because, "the debtor's plan provides the date of sale, the price and the terms. The plan does not identify the purchaser for the obvious reason that a purchaser is not yet available." (Memorandum of Points and Authorities in Opposition to Objections filed June 6, 1989, p. 15:1–4.)

The fact that the debtor has identified a date, the price and the terms of a sale in the absence of an identifiable buyer does not make the proposed sale any less speculative. Merely identifying the date, price and terms is certainly no assurance that a ready, willing and able purchaser will be found at that price and terms when the debtor conducts its sale four years from now.

More importantly, the debtor proposes a four-year delay between plan confirmation and sale. This delay assigns the entire risk of fluctuations in market value to First City. As observed by First City, the rationale behind § 1111(b)(1)(A)(ii) is that where equity holders are not speculating on future appreciation of an asset, but rather are selling it under the plan, undersecured non-recourse creditors do not need the protection of an unsecured recourse deficiency claim. Rather, the market determines the collateral's value and the creditors' liens will be satisfied before equity holders realize any of that value. See *In re Woodridge North Apts., Ltd.*, 71 B.R. 189, 192 (Bankr.N.D.Cal.1987).

Where this market determination is delayed because the sale is delayed—here, for four years—the debtor's equity holders are speculating on future appreciation of the property without any compensating benefit to the undersecured non-recourse creditor. This violates the purpose for the

**250**

§ 1111(b)(1)(A)(ii) exception. As stated by the court in Western Real Estate:

> Thus, the debtors, by the simple expedient of requiring the sale of all properties after confirmation, have deprived the non-recourse creditors of the preferred status of recourse treatment which would otherwise be conferred upon them by Section 1111(b)(1)(A). The loss of this "conversion" to recourse treatment, in turn, means that the undersecured non-recourse creditor remains non-recourse, has no unsecured component to its claim and is limited to the secured claim to the extent of the Section 506(a) value assigned to the property by the court ... This result is wholly lacking in fairness. *Id.* at 589.

Although the court in Western Real Estate declined to address what length of time or what degree of specificity is required to permit the application of the § 1111(b)(1)(A)(ii) exception, it may well be that the exception is only available in those circumstances where the debtor has proposed a sale (under § 363 or pursuant to a plan) at a public auction or under a binding contract of sale to an identifiable buyer at a time substantially contemporaneous with confirmation. Since this debtor's plan proposes neither, it impermissibly deprives First City of the unsecured recourse claim it is entitled to assert pursuant to § 1111(b)(1)(A).

Because the Court has determined that the proposed plan treatment of First City renders the plan unconfirmable, the Court will not address the other objections of First City which focus upon whether the debtor has manipulated classification by creating an impaired unsecured creditor class which excludes the recourse deficiency claim to which First City is entitled. Nor will the Court address the apparent violation of the absolute priority rule created by the debtor's proposal to provide First City with five percent of the net profits of sale (yet not compensating its claim in full) while allowing its equity security holders to reap 95 percent of the net profits. Suffice it to say that merely amending the plan to provide First City with its § 1111(b)(1)(A) unsecured recourse deficiency claim will not remedy the only problem which this plan has.

Although the debtor urges that this Court should permit it to go to a confirmation hearing at which it will introduce evidence regarding the future value of the property, such further evidence would not change the plan terms. Therefore, no purpose will be served by a plan confirmation hearing. The disclosure statement will be denied approval and the confirmation hearing date of August 30, 1989, at 10:00 a.m., vacated.

Counsel for First City shall prepare an order in accordance with this Memorandum Decision within ten (10) days of its entry.