In re WESTERN REAL ESTATE FUND, INC.; Oil Center Investments; First Western Income Realty Trust; Second Western Income Realty Trust; Western Institutional Properties Trust; Nantucket Joint Venture; Watervleit–One Company, Limited; Willowick Investors, Ltd.; and Watervleit–Two Company, Limited, Debtors.

Bankruptcy No. 86–05387–LN.

United States Bankruptcy Court,
W.D. Oklahoma.

Jan. 12, 1990.

---

Kwame T. Mumina, L. Gene Gist and Ruth Brummett, Andrews Davis Legg Bixler Milsten & Price, Oklahoma City, Okl., for debtors.

Warren D. Majors and Larry Glenn Ball, Spradling, Alpern, Friot & Gum, Oklahoma City, Okl., for Travelers Ins. Co.

V. Burns Hargis and Ross A. Plourde, Hartzog, Conger, Cason & Hargis, Okla-

homa City, Okl., for Transamerica Occidental Life Ins. Co.

Order On Objections To Debtors' Supplement No. 2 To The First Amended Disclosure Statement And Amendment No. 5 To The Restated Consolidated Plan of Reorganization[1]

PAUL B. LINDSEY, Bankruptcy Judge.

## BACKGROUND

The history of these cases, initiated by the filing of voluntary petitions under Chapter 11 of the Bankruptcy Code,[2] the businesses of the debtors and the contents of the plans of reorganization, are set out in some detail in this court's memorandum decision, *In re Western Real Estate Fund, Inc.*, 75 B.R. 580 (Bankr.W.D.Okla.1987).[3]

Following the confirmation of the plans of reorganization, appeals were lodged in the United States District Court for the Western District of Oklahoma by a group of creditors interested in a particular property located in California, and by Travelers Insurance Co. ("Travelers") and Transamerica Occidental Life Insurance Co. ("Transamerica"). All of the issues raised by the first group of creditors were resolved against the appellants. *In re Western Real Estate Fund, Inc.*, Nos. CIV–87–1468–T, CIV–87–1584–T, CIV–87–1864–T, CIV–87–2072–T and CIV–88–0674–T (D.C. W.D.Okla. June 3, 1989). (Hereafter, "the District Court Order.")

The District Court Order similarly decided most of the issues raised by Travelers and Transamerica against the appellants. The District Court, however, found that this court had erred in determining the appropriate interest or discount rates to be applied to the plan notes and creditor debentures to be issued to Travelers and Transamerica.[4] The District Court Order concludes with the following paragraph, at page 41:

> Accordingly, for the reasons set forth above, the Bankruptcy Court's scholarly and well-analyzed orders and AFFIRMED in all respects, except for Travelers' and Transamerica's discount rate issues, and on those issues alone the Bankruptcy Court is REVERSED and the case is REMANDED for further proceedings consistent with this Order.

Upon remand of the case to this court, a status conference was held, at which debtors, Travelers and Transamerica were represented by counsel. At that conference, it was determined that debtors would be given a limited time within which to propose, in conformity with the views expressed in the District Court Order, such amendments or modifications to its plans, and such additional or supplemental disclosure as they deemed necessary or appropriate in the circumstances.[5]

Debtors subsequently proposed Amendment No. 5 to the Restated Consolidated

---

1. Debtors have subsequently filed Supplement No. 3 to their First Amended Disclosure Statement. Such supplement was apparently filed in order to address confusion created by certain previous filings, in this case and in a companion case, and to expand somewhat the disclosure previously provided. Amendment No. 5 to the Restated Consolidated Plan of Reorganization is not affected. In the circumstances, no further hearing or briefing will be required or permitted as a result of this subsequent filing.

2. References to statutory provisions by section number only will, unless otherwise noted, be to the Bankruptcy Code, Title 11, United States Code, as amended.

3. Although that opinion declined to confirm the plans as proposed as to objecting non-recourse undersecured creditors, it held that confirmation would be ordered if debtors amended the plans to remedy the offending provisions. Such amendments were subsequently filed and the plans were confirmed by subsequent unpublished order.

4. District Court Order, Pgs. 28–29, 37–38, and 41.

5. It is noted that the District Court Order involved not only the plan of Western Real Estate Fund, Inc. ("WREF"), but the companion plan of Landsing Diversified Properties–II ("LDP–II") as well. Modifications were subsequently proposed and made as to the LDP–II plan, disclosures with respect to such modifications were approved, a confirmation hearing was held, and the plan, as modified, was confirmed without objection. This order therefore relates only to the WREF plan of reorganization.

Plan of Reorganization ("Plan Amendment") and Supplement No. 2 to the First Amended Disclosure Statement ("Supplemental Disclosure").[6] A hearing was convened to determine the adequacy of the disclosure under § 1125. Travelers has raised multiple objections to the proposed disclosure.[7] The court has heard argument and has received the briefs of the parties with regard to the issues raised on remand. Since one of the contentions of Travelers as to the Supplemental Disclosure is that the plan, as modified, is incapable of confirmation as a matter of law, the court must address certain confirmation issues as well as issues related solely to disclosure.

### THE PLAN AMENDMENT AND SUPPLEMENTAL DISCLOSURE

Debtors' Plan Amendment changes the treatment of Travelers' claims by simply stating that the property securing Travelers' Class 4.06.02 claim (the "Secured Claim") will be transferred to Travelers, by quit claim deed, "in satisfaction of all of Travelers' Claims against the Company." Prior to the amendment, Travelers was to receive a Plan Note in the principal amount of the Secured Claim, and a Creditor Debenture in the principal amount of the unsecured component of its claim, both such instruments having attributes as set out in the plan. The Plan Amendment makes no reference to the Creditor Debenture or to the claim underlying it, except the reference to the transfer being in satisfaction of *all* claims of Travelers. The Supplemental Disclosure simply refers the reader to an attached copy of the Plan Amendment.

### TRAVELERS' OBJECTIONS TO THE SUPPLEMENTAL DISCLOSURE

#### I.

Travelers first asserts that the Supplemental Disclosure is inadequate, in that it should be provided to all creditors. The court has authorized debtors to transmit the same only to counsel for Travelers, to the office of the Assistant United States Trustee, and to counsel for RCK Properties (formerly Cedra Properties), the holder of a junior lien on the property securing the indebtedness to Travelers. It is contended that the Plan Amendment may impact feasibility of debtors' plan in its entirety, and that all creditors should be advised of the amendment "so that they can make an informed decision regarding their acceptance or rejection thereof." [8]

Debtors note the court's authorization of limited notice as to the Supplemental Disclosure, and decline to reply to this objection until such time as the court seeks further information on the issue.

#### II.

Travelers next asserts that, even if the Supplemental Disclosure had been mailed to all creditors, it would nevertheless be inadequate, since it fails to provide any analysis of the effect of the Plan Amendment on feasibility of the plan, as amended. It is contended that such disclosure fails to provide the "adequate information" required by § 1125.

Debtors, in their response, do not mention this objection. It does not appear, therefore, that debtors have responded to it, at least directly.

#### III.

Travelers also contends that the Supplemental Disclosure is not proper, since it has not been approved by the court, after notice and a hearing, as required by § 1125.

Debtors do not respond to this objection. However, the court notes that the issues raised by Travelers are raised in the context of objections to the Supplemental Disclosure *proposed* to be employed by debt-

---

6. See note 1, *supra*.

7. At the hearing, it was announced that Transamerica's objections, and debtors' dispute with Transamerica, had been resolved, and that appropriate documentation would be forthcoming to evidence such resolution. This order, there-

fore, will address only the objections and contentions of Travelers.

8. Travelers' Combined Objections, filed October 30, 1989, at page 5.

ors. The hearing on the proposed disclosure has been held, after proper notice, and the parties have been permitted to brief their respective positions. The court has not approved the disclosure, and this objection is therefore clearly without merit.

## TRAVELERS' OBJECTIONS TO THE PLAN AMENDMENT

### I.

Travelers submits that the treatment of its claims may not be modified by the Plan Amendment after the plan has been substantially consummated except to comply with the District Court Order. It is contended that consideration by this court of any issue other than the interest or discount rates would be improper as outside the scope of the mandate of the District Court Order. It is contended that the Plan Amendment is so improper that it should simply be ordered stricken, and not even considered for confirmation.

Debtors respond to the effect that they have concluded that feasibility of the plan as to Travelers could not be satisfactorily demonstrated if a higher interest or discount rate was employed, and that therefore they are compelled to abandon the property. They contend that if they were forced to apply an increased interest or discount rate, confirmation could not be obtained and Travelers would therefore be permitted to defeat not only the Plan Amendment, but perhaps the entire plan, which was confirmed more than two years ago and as to which confirmation has been affirmed in all respects except as to the single issue of the appropriate interest or discount rates as to Travelers and Transamerica.

### II.

Travelers next contends that the Plan Amendment is improper in seeking to satisfy Travelers' secured and unsecured claims by returning the collateral. This objection appears to be two-pronged. First, it is contended that the mere transfer of property to the creditor, without more, does not provide that creditor with fair and equitable treatment. Second, it is contended that in any event, such a transfer can satisfy only the secured portion of the creditor's claim, leaving the unsecured portion unaffected, and that the unsecured portion must be dealt with as are other unsecured claims.

Debtors respond that the transfer of the property to Travelers constitutes the "indubitable equivalent" of Travelers' secured claim under § 1129(b)(2)(A)(iii). They also contend that since the debt to Travelers was non-recourse, and is undersecured, and since the transfer of the property to Travelers is tantamount to a sale under § 363 or a sale under the plan, § 1111(b)(1)(A)(ii) operates to deny it an unsecured claim.

### III.

Finally, Travelers contends that the Plan Modification is improper in that it fails to modify the interest rate applicable to Travelers *and the other unsecured creditors.* Again taking the position that this court may only, and must, modify the interest or discount rate, Travelers takes the position that § 1123 requires that *all* unsecured creditors must be given the benefit of such modification as is ordered with respect to Travelers' unsecured claim.

Debtors contend that the remaining creditors consented to unequal treatment by originally voting in favor of the plans. They also contend that Travelers is asserting that its appeal, in effect, was for the benefit of all unsecured creditors, and that all such creditors should benefit therefrom. This, debtors assert, is incorrect, in that Travelers had no standing to appeal on behalf of others, did not purport to do so, and can not now claim otherwise.

Travelers has filed its reply to debtors' response. It contends that when the unsecured creditors voted in favor of debtors' plans, the plans called for identical treatment to be accorded all members of the unsecured creditors' class. Thus, it asserts that they did not consent at that time to what now, more than two years later, will be unequal treatment. In its reply, Travelers also reiterates and in varying degrees

expands upon arguments made in its original objections.

## DISCUSSION

### LIMITATIONS ON THIS COURT ON REMAND

■ The District Court found that: "The Bankruptcy Court's formula violates the fair and equitable standard [of § 1129(b)(2)(A)] because it does not provide for deferred cash payments totaling at least the allowed amount of the claim, nor did Travelers receive the indubitable equivalent."[9] Similarly, it found that because of the erroneous interest rate determination, the unsecured claim of Travelers was not provided for in accordance with § 1129(b)(2)(B), and that since claimants junior to Travelers were to receive property under the plan, the "absolute priority rule" [§ 1129(b)(2)(B)(ii)] was violated.[10]

Although both of these holdings in the District Court Order involved this court's determination of the appropriate interest rate, the ultimate conclusion was that the plan of reorganization should not have been confirmed *as to Travelers*. The District Court did not, as it could have done, require that on remand the court be limited to a determination of an appropriate interest rate, but remanded the case "for further proceedings consistent with this Order."[11]

An excellent discussion of the limitations upon a trial court in proceeding on remand from an appellate court is found in *Bankers Trust Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 949–51 (3rd Cir.1985):

It is axiomatic that on remand for further proceedings after decision by an appellate court, the trial court must proceed in accordance with the mandate and the law of the case as established on appeal. [citations omitted]

A trial court must implement both the letter and spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces. [citations omitted]

.... From the proposition that a trial court must adhere to the decision and mandate of an appellate court there follows the long-settled corollary that upon remand, it may consider, as a matter of first impression, those issues not expressly or implicitly disposed of by the appellate decision.... A trial court is thereby free to make any order or direction in further progress of the case, not inconsistent with the decision of the appellate court, as to any question not settled by the decision.

Here, the court could ascertain that the appropriate interest or discount rate was, for instance, eleven percent (11%), direct debtors to make new computations based upon that rate, as to the Plan Note and Creditor Debenture issued to Travelers, and proceed to confirmation of the plan, as modified by the new computations. Debtors, in anticipation of *some* increase in the interest or discount rate, made the requisite computations and concluded that they could not establish the feasibility of the plan with the new numbers in place. They therefore determined to do what they could, and undoubtedly would have done, had the court established the higher rate prior to the original confirmation hearings—surrender the property to the creditor and modify their plan to reflect such action.

In this court's opinion, the mandate of the District Court Order is clearly broad enough to permit modification of the plan in these circumstances and to permit this court to adjudicate the confirmability of the plan as so modified. Clearly, this court could not on remand confirm a plan including an interest or discount rate computation without complying with the mandate of the District Court Order as to the proper determination of that rate. But this is not what the court is here being asked to do. It is being asked to adjudicate the confirmability of a plan which, as modified, assert-

---

**9.** District Court Order, page 29.

**10.** District Court Order, page 30.

**11.** District Court Order, Page 41.

edly does not possess any interest or discount rate features as to Travelers.

This court does not believe that the District Court intended, with its remand, to direct this court to engage in an exercise in futility by insisting on the establishment of an interest or discount rate which, without further modification of the plan, would result in a denial of confirmation of debtors' plan, or to prohibit any such further modification.

The objection of Travelers, that the court is limited on remand to the determination of the appropriate interest or discount rate, and that it may not consider debtors' proposed modification of their plan, allegedly avoiding the interest or discount rate problem, will be overruled.

## WHETHER OTHER SECURED AND UNSECURED CREDITORS MUST BE GIVEN NOTICE OF DISCLOSURE AND CONFIRMATION PROCEEDINGS

Travelers' contentions in this regard are two-fold: First, it is claimed that *all* other creditors of these debtors should be put on notice of the Plan Amendment, because the same may impact feasibility of the entire plan, as confirmed more than two years ago. This argument presupposes that the other creditors must be given the opportunity to accept or reject the Plan Amendment, and therefore that the court must now revisit all confirmation issues as to all creditors, including issues resolved by the court more than two years ago and as to which the vast majority of creditors were in at least tacit agreement, as evidenced by their failure to seek review of the court's decisions.

Travelers' second contention in this regard is, in effect, in two parts: It is contended that all other unsecured creditors must be given notice, and necessarily the right to accept or reject the Plan Amendment, since the modification of the interest rate which Travelers contends is mandated by the District Court Order, would result in unequal treatment for the other creditors in the unsecured class, in violation of § 1123(a)(4), which requires that each claim of a particular class be provided the same treatment unless the holder of a claim agrees to unequal treatment. As a supplement to this argument, it is contended that the interest or discount rate applied to Travelers' creditor debenture must be made applicable to the creditor debentures of *all* creditors in the unsecured class in order to prevent the alleged § 1123(a)(4) violation.

Counsel for Travelers conceded at the hearing on the Supplemental Disclosure that if its contentions were adopted, the only course open to the court would most likely be ultimately to completely dismantle the entire reorganization procedure in these cases—in effect, to unscramble an omelet ordered by the vast majority of creditors in the case, and from which they had received the benefits for more than two years.

█ The court must first dispose of debtors' response to Travelers' § 1123(a)(4) argument. Contrary to debtors' assertions, the unsecured creditors who either affirmatively accepted their treatment under the plan, or acquiesced in it by not rejecting the plan, *did not* by doing so consent to unequal treatment. They consented to the absolutely equal treatment which was afforded all members of the unsecured creditors class in the plan which was ultimately confirmed. Thus, debtors' assertion that the exception to § 1123(a)(4) was applicable must be rejected.

In *Smith v. Dairymen, Inc.,* 790 F.2d 1107 (4th Cir.1986), the bankruptcy court had held that two creditors held valid prepetition security interests in milk produced on the debtors' farm but that neither had a security interest in the post-petition production. Only one of the creditors appealed the ruling to the district court, but that court held that *both* creditors had valid pre- and post-petition interests in the production. On appeal to the court of appeals, it was held that the creditor which did not file a notice of appeal from the bankruptcy court was not before the district court, and that that court therefore had no jurisdiction to modify the bankruptcy court's judgment against that creditor.

In reaching its decision, the court first notes that by failing to timely file a notice of appeal to the district court, the creditor failed to invoke that court's jurisdiction, citing *In re LBL Sports Center, Inc.*, 684 F.2d 410, 412 (6th Cir.1982) and *Matter of Ramsey*, 612 F.2d 1220, 1221–22 (9th Cir. 1980). It then states that under general principles of appellate procedure, the non-appealing creditor should not be able to benefit from the decision obtained by the appealing creditor, "even if the co-parties' rights will be affected equally by resolution of the very same issues." *Smith*, 790 F.2d at 1109. The court then quotes from a leading treatise, as follows:

> The general principle that a judgment will not be altered on appeal in favor of a party who did not appeal applies as well to cases in which the interests of the party not appealing are aligned with those of the appellant. Thus if co-defendants are held liable below, and one appeals and one does not, the party appealing does not stand as surrogate for the one who does not, and though the judgment be reversed, the party not appealing remains liable, despite the fact that the liability of each depends upon the same legal principles. Indeed the ultimate result is no different than it would be if individual suits had been brought and one had been successful and the other not.

9 Moore's Federal Practice ¶ 204.11[4], at 4–54 to 4–55 (2d ed. 1980).[12]

The *Smith* court then discusses *In re W.T. Grant Co.*, 20 B.R. 186 (S.D.N.Y. 1982) and *In re Abdallah*, 778 F.2d 75, 77 (1st Cir.1985), both of which apply the rule described in the above quotation, finds that those cases reach the proper result, and declines to follow the earlier *In re Credit Industrial Corp.*, 366 F.2d 402 (2nd Cir. 1966), a case brought under the Bankrupt-

cy Act which reached a contrary result. *Smith*, 790 F.2d at 1109–11.

It is this court's opinion that *Smith*, *Grant* and *Abdallah* represent the better rule, and one which permits the degree of finality to orders and judgments of bankruptcy courts which is essential to the proper administration of the Bankruptcy Code. Any other rule would permit creditors to accept or acquiesce in their treatment under debtors' plan; to file no appeal from the confirmation of the plan; to enter into agreements of settlement or compromise with debtors; to implement those agreements; to receive the benefits therefrom for long periods of time; and to then seek to overturn all which has gone before when a single creditor similarly situated obtains a favorable result on appeal. Such a result would not only be grossly inequitable, but would create chaos in the field of Chapter 11 reorganizations.[13]

The District Court Order did not purport to exercise jurisdiction over creditors who had not appealed and were therefore not before that court, nor did it direct this court to take any action with regard to the rights of such creditors. Nor does that order lend itself to any rational inference to the contrary. It is this court's view, therefore, that this court's earlier orders with regard to debtors' plans are *res judicata* as to the creditors who did not prosecute appeals therefrom, and that this court is therefore without jurisdiction to alter or amend those orders in any particular, directly or indirectly, as to any of such creditors.

In the circumstances, therefore, Travelers' contention that notice must be given to all creditors, secured and unsecured, or in the alternative at least to members of the class of unsecured creditors other than Travelers, must be rejected. The same reasoning and authorities compel the rejection

---

**12.** This excerpt from the treatise, it is noted, deals with appeals from the district court to the court of appeals, and not with bankruptcy appeals.

**13.** *See also Swofford v. International Mercantile Marine Co.*, 113 F.2d 179, 182 (D.C.Cir.1940). "It is settled that, when time for appeal has

expired, a judgment entered by a tribunal with jurisdiction is binding even though erroneous. Moreover, a reversal in an appellate court redounds to the benefit of only those who have appealed. As to other parties the original judgment is valid and enforceable." [Footnotes omitted]

of Travelers' contention that this court must adjust upward the interest rate applicable to the creditor debentures issued to creditors of that class other than Travelers.

## WHETHER THE SUPPLEMENTAL DISCLOSURE MUST ADDRESS FEASIBILITY OF THE PLAN AS AMENDED

■ Travelers contends that the Supplemental Disclosure should address what it contends is the negative impact the Plan Amendment will have upon the plan as a whole. Travelers correctly asserts that feasibility was hotly contested in the confirmation hearings before this court in 1987, and that the success of the plans was at least in large measure dependent upon future sales of individual properties. It is noted, however, that this court's finding of feasibility of the plans was affirmed as to Travelers.[14]

Travelers' apparent concern is that the abandonment of the property securing its claim will prevent debtors from realizing the proceeds from the prospective sale of the property, thereby rendering the projected excess over Travelers' claim unavailable to fund the balance of the plan. Another concern apparently is based upon Travelers' contention that the court must adjust upward the interest rate on the creditor debentures issued to Travelers, and to all other unsecured creditors, and that such an adjustment would render the plan unfeasible.

The court notes that debtors have conceded that the upward adjustment of the interest rate as to Travelers' plan note and creditor debenture would prevent debtors from demonstrating the feasibility of the plan as to Travelers. As the court has held in the next preceding section of this Order, this court will not adjust the interest rate or take any other action with regard to the

rights of any creditor who did not appeal from this court's earlier orders in these cases.

In this court's opinion, the Supplemental Disclosure, which affects only Travelers and as to which only Travelers is entitled to notice, need not address the impact upon feasibility of actions which debtors do not propose to take.

## WHETHER THE PLAN AMENDMENT PURPORTING TO SATISFY TRAVELERS' CLAIMS IN FULL MAY BE CONFIRMED

### I. THE SECURED CLAIM

■ In its original objection, Travelers relied upon *In re Sandy Ridge Development Corp.*, 77 B.R. 69 (Bankr.M.D.La. 1987), (*"Sandy Ridge I "*), in support of its contention that the mere transfer to the creditor of property securing the creditor's claim does not, without more, provide the creditor with the "indubitable equivalent" of its claim.[15] In their response, debtors point out that shortly prior to the filing of Travelers' objection, *Sandy Ridge I* was reversed. *In re Sandy Ridge Development Corp.*, 881 F.2d 1346 (5th Cir.1989). (*"Sandy Ridge II "*) In reply, Travelers assures the court that it did not intend to mislead or misinform the court; that it does not agree with *Sandy Ridge II;* that this court is not bound by that decision; and that in any event, the application of *Sandy Ridge II* to this case would only permit the satisfaction of the *secured* claim of Travelers, and would leave its unsecured claim unaffected.

In *Sandy Ridge II,* the court first makes it clear that the indubitable equivalent language, being found in § 1129(b)(2)(A), refers only to secured claims, and can have no applicability to any unsecured portion of a creditor's claim. The court then, noting

---

14. District Court Order, pages 27–28.

15. Under the "cram down" provisions of 11 U.S.C. § 1129(b), a plan may be confirmed upon the request of a proponent even though all impaired classes of claims have not accepted the plan, if the plan does not discriminate unfairly and is fair and equitable with respect to each class of claims or interests which is impaired under and has not accepted the plan. A plan is fair and equitable with respect to the holders of a class of secured claims if it provides, *inter alia,* "for the realization by such holders of the indubitable equivalent of such claims." 11 U.S.C. § 1129(b)(2)(A)(iii).

that the plan before it provided for the creditor to receive the property which was the collateral for its secured claim, succinctly states that: "[S]ince common sense tells us that property is the indubitable equivalent of itself, this portion of the current plan satisfies the 'indubitable equivalent' requirement." 881 F.2d at 1350.

Travelers also relies upon *In re B. W. Alpha, Inc.*, 89 B.R. 592 (Bankr.N.D.Tex. 1988); *aff'd*, 100 B.R. 831 (N.D.Tex.1988). In that case, it was held, in effect, that the transfer of property which could not be readily converted into cash did not satisfy the "indubitable equivalent" standard. In a footnote to the language quoted in the next preceding paragraph, the court in *Sandy Ridge II* made the following statement:

> Several recent cases have cited *Sandy Ridge [I]* for the conclusion that a transfer of property satisfies the "indubitable equivalent" standard only if that property is the equivalent of cash. *E.g., In re Future Energy Corp.*, 83 B.R. 470, 495 (Bankr.S.D.Ohio 1988). This is incorrect.

Although *B. W. Alpha, Inc., supra*, is not cited in the example given, it is noted that *Sandy Ridge II* was decided by the court of appeals for the Fifth Circuit, in which the Northern District of Texas in located, some nine months after the district court affirmance of *B. W. Alpha, Inc.*, and that *In re Future Energy Corp.* was cited by the district court in its affirmance of *B. W. Alpha, Inc.* It is clear, therefore, that the current law in the Fifth Circuit is contrary to that espoused by Travelers. In this court's view, the Fifth Circuit's analysis of this issue is eminently sound. This court therefore holds that the property sought to be transferred by debtors here is the indubitable equivalent of itself, and

that as to Travelers' secured claim only, the proposed transfer would satisfy the indubitable equivalent requirement of § 1129(b)(2)(A)(iii).

## II. THE UNSECURED CLAIM

In its original objection, Travelers asserted that debtors had simply ignored its unsecured claim in proposing the Plan Amendment, and that to do so violated the requirements of § 1123(a)(4), that claimants within a single class be given equal treatment, and the requirement of § 1129(b)(1), that the plan not discriminate unfairly.

In response, debtors asserted that Travelers was not entitled to more than its property in satisfaction of its claim, because it had no unsecured claim. For this proposition, debtors rely on § 1111(b)(1)(A) [16], and on *Matter of DRW Property Co.*, 57 B.R. 987 (Bankr.N.D.Tex. 1986).

Under § 1111(b)(1)(A), claims secured by liens on property of the estate, whether recourse or non-recourse, are treated as though they were recourse claims, unless an election is made under § 1111(b)(2) or, if the claim is in fact non-recourse, the property is sold under § 363 or is to be sold under the plan. If the § 1111(b)(2) election is made, the creditor's claim is a secured claim to the full extent the claim is allowed, including the secured and unsecured components thereof.[17]

The purpose of § 1111(b) was to restore to the non-recourse secured creditor the benefit of his bargain, and to cure the harsh result of the holding in *Great National Life Insurance Co. v. Pine Gate Associates, Ltd.*, 2 B.C.D. 1478 (Bankr.N.D. Ga.1976), under which the debtor in a de-

---

**16.** (b)(1)(A) A claim secured by a lien on property of the estate shall be allowed or disallowed under section 502 of this title the same as if the holder of such claim had recourse against the debtor on account of such claim, whether or not such holder has such recourse, unless—

(i) the class of which such claim is a part elects, by at least two-thirds in amount and more than half in number of allowed claims of such class, application of paragraph (2) of this subsection; or

(ii) such holder does not have such recourse and such property is sold under section 363 of this title or is to be sold under the plan.

**17.** Under 11 U.S.C. § 506(a), simply stated, a claim secured by a lien on property may be bifurcated. It will then have a secured component to the extent of the value of the property, and an unsecured component to the extent the value of the property is less than the allowed amount of the claim.

pressed real estate market was permitted to "cash out" its non-recourse secured creditor by paying only the then value of the property securing the debt, thus preserving to itself all potential future appreciation in the value of the property. The creditor, holding only a non-recourse claim, was left without an unsecured, deficiency claim.

In *Matter of DRW Property Co., supra,* a non-recourse, undersecured creditor contended, as does Travelers here, that it could retain and assert an unsecured deficiency claim against the debtor even though the collateral for its debt was abandoned or foreclosed upon during the pendency of the Chapter 11 proceeding. The issue arose in the context of an objection to debtor's disclosure statement regarding a proposed plan which would abandon, and therefore permit foreclosure of certain properties, and would deny the non-recourse, undersecured creditor any unsecured claim.

After an exhaustive discussion of the history and purpose of § 1111(b), the court notes that the ability of the creditor, possessed under § 363(k), to purchase its collateral at a sale, with a credit offset allowed for any bid up to the full amount of its debt, protects the interests of the creditor. With this protection, the creditor does not need, and is not given, the further protection of recourse status under § 1111(b). *Id.*, at 989–92.

After stating that a foreclosure sale is clearly not a section 363 sale as referred to in § 1111(b)(1)(A)(ii), as debtor contended, the *DRW* court concedes that abandonment and foreclosure are nevertheless similar to such a sale in that the creditor is permitted to bid in and purchase the property, which allows it to preserve the benefit of its original bargain with the debtor, *i.e.*, payment in full of the debt or a return of the property. *Id.*, at 992–93.

The *DRW* court then quotes from a leading treatise, as follows:

> Although the language of section 1111(b) does not refer specifically to abandonments, if the property is not sold, but is abandoned or returned to the secured

party, the nonrecourse deficiency claim should disappear.

> While section 1111(b)(1)(A)(ii) converts a nonrecourse claim into a recourse claim unless the property is sold under section 363 or under the plan, the subparagraph does not mention abandonment. This may well constitute an omission rather than an expression of the intent of Congress. The effect of abandonment is the same as the effect of a sale under Section 363 or under the plan.

> 5 *Collier on Bankruptcy,* ¶ 1111.02 at 1111–24 (15th Ed.1979).

In denying the objection of the creditor, the *DRW* court concludes as follows:

> The safeguards placed in the Code for non-recourse creditors were placed there to protect the creditor where the Debtor intends to *keep* the property for sale or use in the reorganization process. In other words, conversion of non-recourse claims to recourse claims is the "price" the debtor pays to use encumbered property in its reorganization over the objection of the secured creditor. If the property is voluntarily or involuntarily returned to the secured creditor, the non-recourse secured creditor is no longer entitled to the preferred status. *DRW,* 57 B.R., at 993.[18]

In this case, debtor proposes to formally transfer the property to the creditor. Thus, the creditor will not be required to initiate and pursue foreclosure proceedings, as would have been required of the creditor in *DRW,* in order to obtain title to its property.

Travelers contends that if this court adopts the *DRW* result in this case, it would in effect be reversing its own order, entered in this case. It is true that this court, in *In re Western Real Estate Fund, Inc.,* 75 B.R. 580, 589 (Bankr.W.D.Okla. 1987), refused to apply the § 1111(b)(1)(A)(ii) exception and required debtors to make provision for unsecured components of the non-recourse, undersecured claims of certain creditors. As debtors pointed out at the hearing on the Sup-

---

**18.** See also *In re Tampa Bay Assoc.,* 864 F.2d 47    (5th Cir.1989).

plemental Disclosure, however, the reason for this refusal, as stated by the court, was the total lack of specificity with regard to the proposed post-confirmation sales. This is evidenced by the following from this court's earlier opinion:

> This result is wholly lacking in fairness. Debtors should not be permitted to deprive objecting non-recourse undersecured creditors of the valuable rights which would be conferred upon them under § 1111(b)(1) by simply providing for the sale of the property at some unspecified future time, to some unspecified purchaser, at an unspecified price and on unspecified terms.

Here, as this court understands it, debtors propose to transfer the property to Travelers immediately upon confirmation of the plan, as amended. Thus, the rationale underlying the court's previous refusal to apply the exception is not present here.

■ Travelers' final argument in this context is that the debtors should not be permitted "to abandon two and one-half years after confirmation when the plan has already been substantially consummated." What Travelers fails, or refuses, to recognize, is that no stay of the 1987 order confirming the plans was obtained, from this court or from the District Court. Thus, the implementation of the plans went forward uninterrupted during the pendency of Travelers' appeal, and the District Court Order reversing and remanding as to Travelers placed the case, as it relates to Travelers, in a pre-disclosure and pre-confirmation posture. In effect, therefore, the slate has been wiped clean as to Travelers, and its objection to the Supplemental Disclosure and to the Plan Amendment must stand or fall without reference to what has gone before with regard to other creditors.

■ Without doubt, had debtors originally proposed to transfer the property to Travelers, the transfer would have been permitted as the indubitable equivalent of its secured claim and would have been found to be the entitled to the same treatment as a sale, under § 363 or under the plan, thus depriving Travelers of the pre-

ferred treatment afforded by § 1111(b)(1)(A). Since the case is now before this court as though the plan had never been confirmed as to Travelers, this court sees no reason why the result should be different.

In view of the foregoing, Travelers' contention, that it is entitled to an unsecured claim in the amount by which its total claim exceeds the value of the property, should be rejected.

## CONCLUSION

In summary, this court has found that: The scope of the District Court Order and its mandate does not prevent this court from addressing the issues raised by debtors in their Plan Amendment and Supplemental Disclosure; debtors are not required to provide notice of debtors' proposed actions to creditors who did not appeal from this court's earlier orders; creditors who did not appeal are not entitled to additional relief as a result of the appeal; the Supplemental Disclosure is not deficient in failing to address the issue of feasibility; the proposed transfer of the property would constitute the indubitable equivalent of Travelers' secured claim; by reason of the transfer, if it is effected, Travelers would no longer be entitled to treatment as though it had recourse, and therefore would no longer possess an unsecured claim.

Debtors propose to transfer the property securing Travelers' claim to Travelers, and this court has found that Travelers would not, after such a transfer, possess an unsecured claim in debtors' bankruptcy. Debtors in those circumstances would not be required to issue to Travelers either a plan note on account of its secured claim or a creditor debenture on account of its unsecured claim, as it would have been required to do had it retained the property. Since the proposed modification of debtors' plan will make unnecessary the issuance of these instruments to Travelers, the court is not required to determine the appropriate interest or discount rate which would be applicable to them.

In view of the foregoing, this court holds that the Supplemental Disclosure proposed to be made by debtors herein meets the requirements of § 1125, and that the same should be approved. By separate order, the court will set a hearing on confirmation of the plan, as amended.

IT IS SO ORDERED.